In re Georges MARCIANO, Debtor.

Georges Marciano, Appellant,

v.

Joseph Fahs, Steven Chapnick, and
Elizabeth Tagle, Appellees.

BAP No. CC–11–1008–DMkKi.
Bankruptcy No. SV 11–10426–VK.

United States Bankruptcy Appellate Panel,
of the Ninth Circuit.

Argued and Submitted June 17, 2011.

Decided Sept. 15, 2011.

Daniel J. McCarthy, Hill, Farrer & Burrill LLP, Los Angeles, CA, for Georges Marciano.

Bradley E. Brook, Law Office of Badley E. Brook, Los Angeles, CA, for Steven Chapnick, Joseph Fahs, Elizabeth Tagle.

Before: DUNN, MARKELL, and KIRSCHER, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The bankruptcy court adopted a *per se* rule that, even though they were on appeal, unstayed California judgments entered against the alleged debtor following terminating sanctions for discovery abuses in state court litigation constituted claims that were not subject to bona fide dispute for purposes of entering an order for relief under § 303.[1] Accordingly, the judgment creditors were not precluded from filing an involuntary bankruptcy petition against the judgment debtor. Further, the bankruptcy court declined to stay the proceedings on the involuntary chapter 11 petition pursuant to § 305(a) pending resolution of the alleged debtor's state court appeals. We AFFIRM.

---

1. Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

**32**

## I. SUMMARY OF FACTS [2]

Vanderbilt once telegraphed to some double crossing partners: "Gentlemen you have undertaken to cheat me. I will not sue you, for the law takes too long. I will ruin you." He did.[3]

On August 24, 2006, Georges Marciano sent an e-mail which included the above language to his accountant and other long-term employees. This e-mail was the opening salvo in a course of conduct that ultimately led to the entry of six California state court judgments against Mr. Marciano in the aggregate amount of $260.3 million for libel, defamation, and intentional infliction of emotional distress.

The judgments were entered after the state court entered terminating sanctions against Mr. Marciano following repeated violations of the discovery process, which the trial court characterized as "demonstrating a consistent pattern of discovery abuses...." The terminating sanctions dismissed Mr. Marciano's claims against the judgment creditors and struck his answers to their cross claims.

Mr. Marciano appealed all six judgments, but he could not afford to post a bond to stay the judgments pending the appeals, and his requests for a stay pending appeal were denied by the trial court and by the state Court of Appeal. As a result, the judgment creditors initiated various collection efforts. On July 31, 2009, two judgment creditors, Camille Abat and Miriam Choi, obtained an order for Mr. Marciano's judgment debtor examination. Under California law, service of

the order created a lien on Mr. Marciano's assets. *See* C.C.P. § 708.110(d).

On October 27, 2009, 88 days after the creation of this lien, judgment creditors Joseph Fahs, Steven Chapnick and Elizabeth Tagle (collectively, the "Petitioning Creditors") filed an involuntary Chapter 11 petition ("Involuntary Petition") in accordance with § 303 for the purpose of preserving the right to avoid this lien pursuant to § 547 in order to allow all judgment creditors to participate equally in any distribution of Mr. Marciano's assets. Mr. Marciano rejects the notion that in filing the Involuntary Petition, the Petitioning Creditors were acting other than in bad faith.

Rather than file an answer, Mr. Marciano invoked the procedure available to him under Civil Rule 12(b), applicable pursuant to Rule 1011(b), and filed a motion to dismiss the Involuntary Petition ("First Dismissal Motion"). In the First Dismissal Motion, Mr. Marciano asserted that he had not been properly served with the summons and Involuntary Petition; alternatively, he sought to have the summons quashed. He also asserted in the First Dismissal Motion that the Involuntary Petition was facially unconstitutional where it had been filed to initiate a Chapter 11 case against an individual. The bankruptcy court issued its oral ruling denying the First Dismissal Motion at its hearing held on January 13, 2010 ("January 13 Hearing"). The order denying the First Dismissal Motion was entered May 28, 2010.

Although Mr. Marciano filed his answer to the Involuntary Petition on February 1,

---

**2.** The underlying facts relating to the state court litigation are set out in detail in the bankruptcy court's published opinion: *In re Marciano*, 446 B.R. 407 (Bankr.C.D.Cal. 2010). We have limited the facts in this section to an outline of the proceedings before the bankruptcy court. We include a more

complete development of further facts as relevant in the Discussion section of this Opinion.

**3.** Order Determining Liability Issues on the Complaint of Plaintiffs Gary Iskowitz, Carolyn Malkus, and Theresa Iskowitz Against Defendant Georges Marciano at 2:17–19.

2010, adjudication of the Involuntary Petition moved slowly. Following a status hearing on April 8, 2010, the bankruptcy court entered a scheduling order ("Scheduling Order"), which identified the agreed facts relating to adjudication of the Involuntary Petition pursuant to § 303, and which invited the filing of a motion for summary judgment on those agreed facts.

Thereafter, a dispute arose regarding whether Mr. Marciano should be allowed to proceed with discovery, *inter alia,* on the issue of whether the Petitioning Creditors' filing of the Involuntary Petition constituted "bad faith." In the course of resolving the dispute, the bankruptcy court entered an order ("Marciano Sanctions Order") which denied Mr. Marciano's request that terminating sanctions be entered against the Petitioning Creditors based upon their alleged failures to respond to his discovery requests. The bankruptcy court also entered a protective order ("Protective Order"), which deferred discovery until after the determination of whether it was appropriate to enter an order for relief in the case.

On April 26, 2010, Mr. Marciano filed a motion to dismiss or suspend the proceedings pursuant to § 305(a) ("Second Dismissal Motion"), which the bankruptcy court denied by its order entered July 2, 2010. The bankruptcy court also denied two motions filed by Mr. Marciano in which he requested that the bankruptcy court reconsider its denial of a "stay" under § 305(a) until the state court appeals had been resolved.

Ultimately, on July 14, 2010, the Petitioning Creditors filed their motion for summary judgment ("Summary Judgment Motion"), seeking a determination from the bankruptcy court that they were entitled to entry of an order for relief on the Involuntary Petition pursuant to § 303. In response, Mr. Marciano filed his cross-motion for summary judgment ("Summary Judgment Cross–Motion"). On December 28, 2010, the bankruptcy court entered its order ("Summary Judgment Order"), granting the Summary Judgment Motion and denying the Summary Judgment Cross–Motion, and an order for relief ("Order for Relief") in the case.

Mr. Marciano promptly filed his notice of appeal. He also requested reconsideration of the bankruptcy court's Summary Judgment Order, which the bankruptcy court denied without a hearing. In addition, Mr. Marciano filed an application for a temporary stay of the Order for Relief, and an emergency motion for a temporary stay and for a stay pending appeal. The bankruptcy court entered a 30–day temporary stay of the Chapter 11 case to allow Mr. Marciano to seek a stay pending appeal from this Panel ("Temporary Stay Order").

Our motions panel denied Mr. Marciano's motion for stay pending appeal; the Ninth Circuit thereafter dismissed Mr. Marciano's appeal of our order denying the stay pending appeal.

The following ten orders of the bankruptcy court are included in this appeal:

1. Order Denying First Dismissal Motion;

2. Order Denying Second Dismissal Motion;

3. Order Denying First Motion for Reconsideration of Order Denying Second Dismissal Motion;

4. Order Denying Second Motion for Reconsideration of Order Denying Second Dismissal Motion;

5. Marciano Sanctions Order;

6. Protective Order;

7. Summary Judgment Order;

8. Order Denying Motion for Reconsideration of Summary Judgment Order;

9. Order for Relief; and

10. Temporary Stay Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether the bankruptcy court abused its discretion when it determined that Mr. Marciano had not abandoned his residence.

2. Whether the bankruptcy court erred when it determined that service on Mr. Marciano had been properly effected.

3. Whether the bankruptcy court abused its discretion when it entered the Marciano Sanctions Order and the Protective Order.

4. Whether the bankruptcy court abused its discretion when it denied the Second Dismissal Motion and the related motions for reconsideration.

5. Whether the bankruptcy court erred when it granted the Summary Judgment Motion.

6. Whether the bankruptcy court erred when it adopted a *per se* rule that the unstayed judgments held by the Petitioning Creditors were not subject to bona fide dispute.

7. Whether the bankruptcy court erred when it entered the Order for Relief.

8. Whether the bankruptcy court abused its discretion when it denied a stay of the Chapter 11 proceedings while the Order for Relief was on appeal.

## IV. STANDARDS OF REVIEW

### A. General Standards of Review.

■ De novo means review is independent, with no deference given to the trial court's conclusion. *See First Ave. West Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir.2006).

■■ We apply a two-part test to determine whether the bankruptcy court abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. *Id.* Then, we review the bankruptcy court's fact findings for clear error. *Id.* at 1262 & n. 20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Id.*

■ We may affirm the bankruptcy court's ruling on any basis supported by the record. *See, e.g., Heilman v. Heilman (In re Heilman)*, 430 B.R. 213, 216 (9th Cir. BAP 2010); *FDIC v. Kipperman (In re Commercial Money Center, Inc.)*, 392 B.R. 814, 826–27 (9th Cir. BAP 2008); *see also McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir.2009).

### B. Standards of Review Relating to the First Dismissal Motion.

■■ The existence of the bankruptcy court's jurisdiction is a question of law subject to de novo review. *See Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 554 (9th Cir.1992). "We review de novo the determination that service of process was sufficient." *Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1081 (9th Cir.2004).

Ripeness is a question of law reviewed de novo. *See Chang v. United States,* 327 F.3d 911, 921 (9th Cir.2003); *Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 849 (9th Cir.), *amended by* 312 F.3d 416 (9th Cir.2002).

C. *Standards of Review Relating to the Discovery Orders on Appeal.*

"We owe substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced that it amounts to an abuse of discretion." *Illinois Inv. Trust No. 92 7163 v. Allied Waste Indus., Inc. (In re Resource Tech. Corp.),* 624 F.3d 376, 386 (7th Cir.2010); *see also Bass v. First Pacific Networks, Inc.,* 79 F.3d 1152 at *1 n. 1 (9th Cir.1996) (unpublished decision); *Rogers v. Alaska Steamship Co.,* 290 F.2d 116, 123 (1961).

We review the refusal to impose discovery sanctions for an abuse of discretion. *See Avery Dennison Corp. v. Allendale Mut. Ins. Co.,* 310 F.3d 1114, 1117 (9th Cir.2002).

We review the bankruptcy court's refusal to permit further discovery before ruling on a summary judgment motion for an abuse of discretion. *Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 523 (9th Cir.1989); *see also Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701, 705 (9th Cir. 2004). We review the bankruptcy court's decision whether to grant a protective order for an abuse of discretion. *See Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir.2003).

D. *Standards of Review Relating to the Second Dismissal Order.*

We review issues of federal statutory construction, including interpretation of provisions of the Bankruptcy Code, de novo. *Einstein/Noah Bagel Corp. v.*

*Smith (In re BCE W., L.P.),* 319 F.3d 1166, 1170 (9th Cir.2003); *Greenpoint Mortgage Funding, Inc. v. Herrera (In re Herrera),* 422 B.R. 698, 709 (9th Cir. BAP 2010).

A bankruptcy court's decision to deny a motion for additional findings, reconsideration or an amended order or judgment is reviewed for abuse of discretion. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner),* 161 F.3d 1216, 1217 (9th Cir.1998); *Hopkins v. Cerchione (In re Cerchione),* 414 B.R. 540, 545 (9th Cir. BAP 2009).

E. *Standards of Review Relating to the Summary Judgment Order and the Order for Relief.*

Whether there is a "bona fide dispute" for the purposes of § 303 is a question of fact reviewed for clear error. *Liberty Tool & Mfg. v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.),* 277 F.3d 1057, 1064 (9th Cir. 2002). However "[f]indings of fact made in summary judgment proceedings are not entitled to the 'clearly erroneous' standard of review because the trial court has not weighed the evidence in the conventional sense." *C.H. Rider & Family v. Wyle (In re United Energy Corp.),* 102 B.R. 757, 760 (9th Cir. BAP 1989), 51 B.R. 591, 594–95 (9th Cir. BAP 1985). Rather, the reviewing court must stand in the same position as the court below and apply the standards set forth in Civil Rule 56(c). Thus, we review de novo a bankruptcy court's decision to grant summary judgment. *Wood v. Stratos Product Dev. (In re Ahaza Sys., Inc.),* 482 F.3d 1118, 1123 (9th Cir.2007) (stating that both the Court of Appeals and the BAP apply de novo review to a bankruptcy court's grant of summary judgment). Accordingly, when the determination that there is no bona fide dispute for purposes of § 303 is made in the con-

text of a summary judgment analysis, our review is de novo rather than applying a clearly erroneous standard. In the context of determining whether there is a bona fide dispute for purposes of § 303, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much." *Vortex Fishing*, 277 F.3d at 1064.

We review a bankruptcy court's interpretation of state law de novo. *Rabkin v. Ore. Health Sciences Univ.*, 350 F.3d 967, 970 (9th Cir.2003).

## V. DISCUSSION

### A. *Ten Orders, One Appeal.*

Generally, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of [trial court] error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). An "order for relief" is such a final judgment or order. Accordingly, the appeal is timely as to each of the orders on appeal that were entered prior to entry of the Order for Relief.

### B. *The Bankruptcy Court Properly Exercised Jurisdiction Over Mr. Marciano and the Involuntary Petition.*

This appeal is all about delay. The Involuntary Petition was filed on October 27, 2009, and the Order for Relief was not entered until December 28, 2010.

Section 303(b) establishes the procedure for commencing an involuntary bankruptcy case. As relevant to this appeal, § 303(b) provides:

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount ... if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims. . . .

Rule 1010 provides:

On the filing of an involuntary petition ..., the clerk shall forthwith issue a summons for service. When an involuntary petition is filed, service shall be made on the debtor. . . . **The summons shall be served with a copy of the petition in the manner provided for service of a summons and complaint by Rule 7004(a) or (b).** If service cannot be so made, the court may order that the summons and petition be served by mailing copies to the party's last known address, and by at least one publication in a manner and form directed by the court. The summons and petition may be served on the party anywhere. Rule 7004(e) and [Civil Rule 4(*l*)] apply when service is made or attempted under this rule.

(Emphasis added.)

Rule 7004(a)(1) makes applicable Civil Rule 4(c)(1), which requires that the summons be served with the Involuntary Petition. Rule 7004(b)(1) authorizes service of the summons and Involuntary Petition by first class mail:

Upon an individual other than an infant or incompetent, by mailing a copy of the summons and [involuntary petition] to the individual's dwelling house or usual

place of abode or to the place where the individual regularly conducts a business or profession.

Rule 7004(f) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons ... in accordance with this rule or the subdivisions of [Civil Rule 4] made applicable by these rules is effective to establish personal jurisdiction over the person of any [involuntary debtor] with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Under Rule 7004(f), the bankruptcy court had personal jurisdiction over Mr. Marciano if three requirements were met:

> (1) service of process has been made in accordance with [ ] Rule 7004 or Civil Rule 4; (2) the court has subject matter jurisdiction under section 1334 of the Code; and (3) exercise of jurisdiction is consistent with the Constitution and laws of the United States.

10 COLLIER ON BANKRUPTCY ¶ 7004.07 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010), *citing In re Tipton,* 257 B.R. 865, 870 (Bankr. E.D.Tenn.2000).

### 1. *The Petitioning Creditors Properly Served Mr. Marciano In Accordance With Rule 7004(b)(1).*

 As his first issue on appeal, Mr. Marciano asserts that the bankruptcy court erred when it failed to dismiss the Involuntary Petition based upon defective service. Under the facts of this case, we agree with the bankruptcy court that service of the summons and Involuntary Petition was sufficient to create personal jurisdiction over Mr. Marciano for purposes of adjudicating the Involuntary Petition.

On October 31, 2009, the Petitioning Creditors served the Involuntary Petition and summons on Mr. Marciano by U.S. Mail at two addresses: 1000 N. Crescent Drive in Beverly Hills ("Beverly Hills Address"), and 2121 Avenue of the Stars, 24th Floor, in Los Angeles ("Los Angeles Address"). In his First Dismissal Motion, Mr. Marciano asserted that the Involuntary Petition should be dismissed because he had not been properly served with the Involuntary Petition and summons.[4] He supported the First Dismissal Motion with a declaration, in which he averred that the Beverly Hills Address was his residential address until August 2009 he had left California and had not returned; 2009 he had been outside of the United States continuously; and as of the date of the declaration, November 19, 2009, he had not reentered the United States. He further

---

**4.** Notwithstanding Mr. Marciano's vigorous and sustained efforts to contest the involuntary bankruptcy proceedings, his first action after the filing of the Involuntary Petition, taken even before service of the Involuntary Petition and summons, was to file in the State Court Litigation a "Notice of Automatic Stay," which is set forth below in its entirety: PLEASE TAKE NOTICE that all actions against Georges Marciano in the above-captioned action, including any efforts to collect upon the judgments entered against Georges Marciano in the matters scheduled for hearing and the examinations scheduled for *November 17 and 23, 2009,* and for *December 7 and 9, 2009,* before this Court, are stayed in their entirety based upon the automatic stay that was effectuated under 11 U.S.C. § 362(a)(1) pursuant to an involuntary Chapter 11 petition that was filed against defendant Georges Marciano in the United States Bankruptcy Court, Central District of California, Los Angeles Division, on October 27, 2009, commencing case no. 2:09–bk–39630–VK. A true and correct copy of the involuntary petition is attached hereto as Exhibit A.

averred that the Los Angeles Address is the address of the law firm of Browne, Woods & George, "which is and has been my counsel in the [state court litigation]." He declared that the use of the Los Angeles Address as his address on pleadings filed "in pro per" in the state court litigation was done fraudulently and without his knowledge, that he had never regularly conducted any of his own business activities at the Los Angeles Address, and that he does not receive mail at the Los Angeles Address. *See Declaration of Georges Marciano,* dated November 19, 2009.

The bankruptcy court, noting that Mr. Marciano had not been subject to any cross examination, was not present at the court hearing on the First Dismissal Motion, and had not filed "one piece of paper that indicates tangibly that he moved out" of the Beverly Hills Address, determined that Mr. Marciano's declaration was not sufficient to establish that the Beverly Hills Address was not his dwelling house or usual place of abode. Tr. of Jan. 13, 2010 H'ring at 34:14–24. Relying on the analysis of the court in *Garcia v. Cantu,* 363 B.R. 503, 511–15 (Bankr.W.D.Tex. 2006), the bankruptcy court found that Mr. Marciano had presented no evidence that he had abandoned the Beverly Hills Address as his residence. *Id.* at 36:6–12. We agree.

We also find persuasive the discussion in *Garcia v. Cantu* of the "Adverse Inference Rule." If Mr. Marciano had actual documentary evidence that he had abandoned the Beverly Hills Address as his dwelling place or usual place of abode, he should have provided it. Instead, Mr. Marciano prepared a self-serving declaration in which he coyly avoided any disclosure of

the proximate, let alone exact, location of his alleged new residence. The bankruptcy court was allowed to draw the inference that documentary evidence of Mr. Marciano's current residence would have harmed his assertion that the Beverly Hills Address was not his dwelling place or usual place of abode for purposes of service under Rule 7004(b)(1).

The bankruptcy court further determined that current filings with the California Secretary of State evidence that Mr. Marciano was regularly conducting business at the Beverly Hills Address, where Mr. Marciano was listed as the agent for four separate entities,[5] and where his address set forth in those filings was the Beverly Hills Address. *Id.* at 34:25–35:9. Finally, the bankruptcy court found significant the fact that the website Mr. Marciano used to promote his candidacy for the office of governor of the State of California used the Beverly Hills Address as the address at which he could be contacted.[6] *Id.* at 37:1–9.

Based on these findings, the bankruptcy court properly determined that service of the Involuntary Petition and summons on Mr. Marciano was sufficient to preclude dismissal of the Involuntary Petition for insufficiency of service. *Id.* at 34:25–35:9.

2. *The Bankruptcy Court's Exercise of Jurisdiction In Adjudicating the Involuntary Petition Was Consistent With the Constitution.*

In addition to personal jurisdiction over Mr. Marciano, the bankruptcy court had subject matter jurisdiction over the involuntary proceedings pursuant to 28 U.S.C. § 1334(a), which " . . . the district

---

5. The relevant filings are included as Ex. 2 to the Petitioning Creditors' request for judicial notice filed in support of their opposition to the First Dismissal Motion.

6. A copy of the relevant website text is included as Ex. 3 to the Petitioning Creditors' request for judicial notice filed in support of their opposition to the First Dismissal Motion.

courts shall have original and exclusive jurisdiction of all cases under title 11," and pursuant to 28 U.S.C. § 157(a), which provides that "[e]ach district court may provide that any or all cases under title 11 ... shall be referred to the bankruptcy judges for the district." The District Court for the Central District of California entered its order of reference on August 6, 1984. We previously have held that "[a]n involuntary petition that is sufficient on its face and which contains the essential allegations invokes the subject matter jurisdiction of the bankruptcy court." *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 246 (9th Cir. BAP 2007), *citing Bakonyi v. Boardroom Info. Sys. (In re Quality Laser Works)*, 211 B.R. 936, 941 (9th Cir. BAP 1997), *aff'd mem.*, 165 F.3d 37 (9th Cir.1998). "A petition on Official Form No. 5 is regular on its face if the boxes next to the preprinted essential allegations are checked and if the form is otherwise correctly completed." *In re Kidwell*, 158 B.R. 203, 209 (Bankr.E.D.Cal.1993).

Mr. Marciano has not suggested, either to the bankruptcy court or on appeal, that the Involuntary Petition was not sufficient on its face, with the consequence that the bankruptcy court lacked subject matter jurisdiction. However, Mr. Marciano contends that the bankruptcy court's exercise of jurisdiction over him in this case is not consistent with the Constitution.

 Specifically, Mr. Marciano asserts that the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") which authorize the filing of an involuntary Chapter 11 petition against an individual debtor violate the Thirteenth Amendment prohibition against involuntary servitude. Mr. Marciano relies primarily on § 1115(a)(2), which includes in the definition of property of the estate "earnings from services per-

formed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first;" § 1129(a)(15)(B), which requires that, if the holder of an unsecured claim objects to confirmation of the plan, "the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor" that the debtor receives for a least five years; and § 1141(d)(5), which precludes entry of a discharge until all payments due under the plan have been completed.

The Petitioning Creditors responded that Mr. Marciano's own declaration raised the factual possibility that he had no "earnings from services performed by the debtor," which precluded Mr. Marciano's facial constitutional challenge.

> My income now and for many years primarily has been derived from my personal efforts in investing in real estate, securities, and collectibles, among other things, although I believe that much of my income and assets were stolen from me.

Supplemental Declaration of Georges Marciano in Support of First Dismissal Motion. The Petitioning Creditors asserted that, at most, Mr. Marciano could argue that the chapter 11 provisions relating to commitment of post-petition earnings to creditors were unconstitutional as applied. Until it was determined that an order for relief would be entered in the case, Mr. Marciano's constitutional challenge was premature.

The bankruptcy court agreed, stating that the time to determine whether Mr. Marciano had "earnings from personal services" that might constitute property of the estate was after an order for relief was entered. Until then, § 303(f) authorized Mr. Marciano to "continue to use, acquire, or dispose of property as if an involuntary

case had not been commenced." The bankruptcy court ruled that unless and until an order for relief was entered in the case, the constitutional issue raised by Mr. Marciano was not ripe. The limited proceedings before the bankruptcy court required only a determination as to whether the Petitioning Creditors satisfied their burden of proof under § 303(b) such that entry of an order for relief was appropriate. Tr. of Jan. 13, 2010 H'ring at 37:15–40:25.

■■■■■■ We find no error in the bankruptcy court's refusal to reach the constitutional issue. "When challenging the constitutionality of a statute, it is incumbent upon the challenger to show that in its operation the statute is unconstitutional to him in his situation." 2A *Statutes and Statutory Construction* § 45:11 (7th ed. 2011). The provisions of Chapter 11 simply were not applicable to Mr. Marciano at the time he raised the constitutional issues in the First Motion to Dismiss, *i.e.*, because no order for relief had been entered. "Courts will not anticipate a constitutional issue in advance of the necessity of deciding it, or accept constitutional issues for adjudication when the controversy is 'premature.'" 16 Am.Jur.2d *Constitutional Law* § 118 (2010). Although the discussion of the doctrine of constitutional avoidance set forth in *In re Clemente*, 409 B.R. 288, 294–96 (Bankr.D.N.J.2009), is interesting, particularly where the constitutionality of § 1115(a)(2) is raised, in the context of the First Motion to Dismiss, the bankruptcy court correctly applied the doctrine of ripeness. The ripeness doctrine "reflects the determination that courts should decide only 'a real, substantial controversy,' not a mere hypothetical question." 13B Wright, Miller & Cooper *Fed. Practice & Proc.* § 3532.2 (3d ed. 2008).

Because (1) Mr. Marciano was served in accordance with Rule 7004(b)(1), (2) the bankruptcy court had subject matter jurisdiction to adjudicate the Involuntary Petition, and (3) the constitutional issues raised by Mr. Marciano were not ripe, the bankruptcy court could properly exercise personal jurisdiction over Mr. Marciano pursuant to Rule 7004(f). Accordingly, the bankruptcy court did not abuse its discretion when it denied the First Dismissal Motion.

C. *The Bankruptcy Court Did Not Abuse Its Discretion When It Limited Discovery Prior to Its Determination of Whether Entry of An Order for Relief Was Appropriate.*

On February 1, 2010, after the bankruptcy court denied the First Dismissal Motion, Mr. Marciano filed his answer, in which he denied the essential allegations asserted in the Involuntary Petition. His answer also contained affirmative defenses, including insufficiency of process, lack of personal jurisdiction, and failure to state a claim, and requested abstention. Finally, the answer contained counterclaims pursuant to § 303(i)(1) and (2) for costs, attorneys fees, damages proximately caused by the filing of the Involuntary Petition, and punitive damages.

On April 8, 2010, the bankruptcy court held a status conference with respect to the prosecution of the Involuntary Petition, at which the bankruptcy court enunciated its views as to the limited issues to be decided in its determination of whether it was appropriate to enter an order for relief under § 303. The bankruptcy court's scheduling order entered April 28, 2010 ("Scheduling Order"), set forth the schedule for further proceedings on the Involuntary Petition, and defined the scope of those further proceedings.

The Petitioning Creditors *may* file a Motion for Summary Judgment (the

"MSJ") regarding whether an order for relief should be entered against [Mr. Marciano] in connection with this involuntary proceeding. In bringing the MSJ, the Petitioning Creditors *may* rely upon *the following* facts which the parties have acknowledged to the Court are undisputed:[7] *(1) judgments of the Los Angeles County Superior Court in an aggregate amount exceeding $260 million have been entered against [Mr. Marciano] and in favor of eight judgment creditors (the "Judgments"), of which more than $90 million is attributable to judgments in favor of the Petitioning Creditors; (2) appeals are pending with respect to the Judgments; (3) [Mr. Marciano] is not paying the Judgments; and (4) except for the automatic stay that arose upon the filing of the involuntary petition, there was and is no stay in effect preventing collection upon the Judgments. Based on these undisputed facts, the MSJ will request that* the Court determine: (1) whether the Petitioning Creditors' claims, each of which is based upon his or her own Los Angeles Superior Court judgment against [Mr. Marciano], are "subject to bona fide dispute as to liability or amount" under 11 U.S.C. § 303(b) when Marciano has appealed each, but was not voluntarily paying any of them nor was there a stay in effect preventing collection upon any of them prior to the automatic stay which arose when this involuntary case was filed; *and* (2) whether [Mr. Marciano] is generally not paying his debts as they become due pursuant to 11 U.S.C. § 303(h)(1).

(Emphasis in original.)

Because Mr. Marciano believed that additional factual issues might develop during the discovery process, the bankruptcy court expressly provided in the Scheduling Order "[t]here is no stay of any discovery which the parties may otherwise be entitled to undertake," and advised the parties of dates the court anticipated being available to resolve, by telephone, any discovery disputes the parties might encounter prior to the continued status hearing scheduled for June 3, 2010.

Discovery disputes did in fact arise. On April 9, 2010, Mr. Marciano noticed depositions for each of the Petitioning Creditors, to take place April 19, April 22, and April 23, 2010. On the same date, Mr. Marciano served document production requests and interrogatories on the Petitioning Creditors, responses for which were due by May 8, 2010. On April 14, 2010, the Petitioning Creditors notified Mr. Marciano of their general opposition to the discovery; on April 18, 2010, the Petitioning Creditors notified Mr. Marciano of their objections to the noticed depositions.

In light of the discovery disputes that had developed, LBR 7026–1(c) imposed the requirement of filing with the bankruptcy court a written stipulation of the dispute. LBR 7026–(1)(c) provides in relevant part:

(3) *Moving Papers.* If counsel are unable to resolve the dispute, the party seeking discovery must file and serve a notice of motion together with a written stipulation by the parties.

(A) The stipulation must be contained in 1 document and must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the con-

---

7. "[T]here's no dispute as to the facts. The facts for this particular exercise are, yes, there are entered judgments, yes, they are not stayed under state law, yes, Mr. Marciano is not paying them. Let's decide whether on that basis, in and of itself, an order for relief can be entered." Tr. of April 8, 2010 H'ring at 38:15–20.

tentions and points and authorities of each party as to each issue.

(B) The stipulation must not simply refer the court to the document containing the discovery request forming the basis of the dispute. For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions, separated stated.

(C) In the absence of such stipulation or a declaration of counsel of noncooperation by the opposing party, the court will not consider the discovery motion.

(4) *Cooperation of Counsel: Sanctions.* The failure of any counsel either to cooperate in this procedure ... or to provide the moving party the information necessary to prepare the stipulation required by this rule within 7 days of the meeting of counsel [described in LBR 7026–1(c)(2) ] will result in the imposition of sanctions, including the sanctions authorized by [Rule] 7037 and LBR 9011–3.

It appears that the Petitioning Creditors made known to Mr. Marciano their intent to seek a protective order, and that the parties agreed that the Petitioning Creditors would file the required stipulation by April 23, 2010, in connection with the contemplated motion for protective order. On April 18, 2010, the Petitioning Creditors provided to Mr. Marciano what he characterized as a "deficient joint stipulation" without any points and authorities to which Mr. Marciano could respond. They did provide a draft joint stipulation with points and authorities on April 20, 2010, to which Mr. Marciano responded on April 21, 2010.

The joint stipulation never was completed for filing by the Petitioning Creditors. Ultimately, the Petitioning Creditors did not appear for their depositions, which the parties had agreed to be reset to May 11, 12, and 13, 2010, and failed to respond to Mr. Marciano's document production requests and interrogatories.

On May 13, 2010, Mr. Marciano filed a motion ("Marciano Discovery Motion") to be heard at the June 3, 2010 continued status hearing. In the Marciano Discovery Motion, Mr. Marciano requested that the bankruptcy court enter discovery sanctions as follow: (1) striking the Involuntary Petition and dismissing the involuntary Chapter 11 case, (2) ordering prompt compliance with the pending discovery requests, (3) imposing monetary sanctions against the Petitioning Creditors and their counsel in the amount of $9,000, representing the amount of fees and costs incurred by Mr. Marciano in connection with the Marciano Discovery Motion, and (4) relieving Mr. Marciano of his obligation under the discovery rules to meet and confer with Petitioning Creditors in connection with a motion for protective order they were threatening to file.

At the June 10 Hearing on the Marciano Discovery Motion,[8] the bankruptcy court determined that discovery sanctions against the Petitioning Creditors did not appear appropriate in light of the admittedly confusing order the bankruptcy court had entered on April 30, 2010 ("April 30 Order"), in which the bankruptcy court edited the proposed stipulated order submitted by the parties with respect to their discovery disputes such that it provided simply "[t]he Court will evaluate the issues identified in the Stipulation at the status

---

**8.** The June 3, 2010 status conference was reset by the bankruptcy court to June 10, 2010.

conference to be held on June 3, 2010 . . . ." The bankruptcy court determined that the Petitioning Creditors could reasonably have concluded in reading the April 30 Order that all discovery had been stayed pending the June 10 Hearing.

The bankruptcy court entered an order ("Marciano Discovery Order"), partially granting the Marciano Discovery Motion, which directed the Petitioning Creditors to serve complete written responses to the document production requests and the interrogatories by July 26, 2010 and to appear to be deposed on August 2, 3 and 4, 2010. The Marciano Discovery Order also scheduled a hearing on the issuance of a protective order, which was to be raised in a joint stipulation ("Joint Stipulation") to be filed by July 2, 2010 in compliance with LBR 7026–1(c)(3). The Joint Stipulation was timely filed as required by the Marciano Discovery Order.

On the day before the hearing on the Joint Stipulation, the Petitioning Creditors filed their motion for summary judgment ("Summary Judgment Motion"), seeking a determination that entry of an order for relief was appropriate as a matter of law. At the July 15 Hearing on the Joint Stipulation, the bankruptcy court determined that because the Summary Judgment Motion was based solely upon the agreed facts identified in the Scheduling Order entered April 28, 2010, a stay of discovery pending resolution of the Summary Judgment Motion was appropriate. The order staying discovery ("Protective Order") was entered on September 8, 2010.

■ On appeal, Mr. Marciano challenges the entry of the Protective Order on two grounds. First, he asserts that the bankruptcy court abused its discretion when it allowed the Petitioning Creditors to seek a protective order in an untimely manner, *i.e.*, after the time for responses to the discovery requests were due. In particular, Mr. Marciano objects to the finding of the bankruptcy court that its April 30 Order could have been interpreted as a stay of all discovery until the June 3 status conference. Giving substantial deference to the bankruptcy court's interpretation of its own April 30 Order, and concluding that its interpretation is neither illogical, implausible, nor without support in inferences that may be drawn from the facts in the record, we find no abuse of discretion in allowing the Petitioning Creditors to seek a protective order in the Joint Stipulation. The bankruptcy court's interpretation of the April 30 Order precludes any finding of dilatory behavior by the Petitioning Creditors which might support a waiver of the right to seek a protective order.

■ Second, Mr. Marciano asserts the entry of the Protective Order was improper because it deprived him of the opportunity to conduct discovery "on all issues," with the result that he was precluded from defending himself in the proceedings on the Motion for Summary Judgment. The running colloquy between the bankruptcy court and Mr. Marciano as reflected in the transcripts of the hearings held April 8, June 10, and July 15, 2010, establishes that the primary issue on which Mr. Marciano wanted to take discovery was his contention that the Petitioning Creditors had filed the Involuntary Petition in bad faith.

At the July 15 Hearing, the bankruptcy court clarified that it was not denying discovery, but rather that it was "staging" discovery. It was undisputed that the Summary Judgment Motion was brought on the agreed facts identified by the bankruptcy court in its Scheduling Order. The bankruptcy court therefore determined that, before ordering additional discovery, it was appropriate to decide "whether the facts that are not in dispute are sufficient

to enter an order for relief." Tr. of July 15, 2010 H'ring at 46:8–11.

Civil Rule 26(b), applicable in the adjudication of the Involuntary Petition pursuant to Rules 9014 and 7026, provides that *"Unless otherwise limited by court order, . . .* [the parties] may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Civil Rule 26(b)(1) (Emphasis added.). Mr. Marciano contends that because he pled bad faith as an affirmative defense, the Protective Order deprived him of his opportunity to defend the Involuntary Petition. We observe that Civil Rule 26(b)(2)(C)(iii) authorizes the bankruptcy court, on its own motion, to limit discovery otherwise allowed by Civil Rule 26, if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, . . . and the importance of the discovery in resolving the issues." Further, Civil Rule 42(a), applicable to the dispute before the bankruptcy court pursuant to Rules 9014 and 7042, provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. . . ." Thus, under the applicable rules, the bankruptcy court was authorized to limit discovery. The question we are asked to decide is whether the bankruptcy court abused its discretion in doing so on the facts and under the circumstances of the dispute pending before it.

As relevant to this case, § 303 provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims. . . .

. . .

(h) [If the petition is timely controverted], after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount. . . .

The bankruptcy court correctly noted that § 303(b) "does not contain any language regarding the good faith of the petitioning creditors." *Marciano,* 446 B.R. at 430. Nor does § 303(h).

Section 303(i)(2) "makes plain that bad faith is not relevant unless consequential and punitive damages are under consideration." *In re Kidwell,* 158 B.R. 203, 217 (Bankr.E.D.Cal.1993), *citing In re Johnston Hawks, Ltd.,* 72 B.R. 361, 365 (Bankr.D.Haw.1987), *aff'd,* 885 F.2d 875 (9th Cir.1989). *See also In re Bank of Am., N.A.,* No. 11–24503, 2011 WL 2493056, at *6 (Bankr.D.Colo. Jun. 21, 2011). Section 303(i)(2) provides:

*If the court dismisses a petition under this section other than on consent of all petitioning creditors and the debtor, and if the debtor does not waive the right to judgment under this subsection,* the court *may* grant judgment—

. . .

(2) *against any petitioner that filed the petition in bad faith,* for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

(Emphasis added.) Ordinarily, the bankruptcy court would not reach the issue of bad faith unless and until the Involuntary Petition was dismissed. *In re Ross,* 63 B.R. 951, 955 (Bankr.S.D.N.Y.1986) (the court need not reach the affirmative defense that the involuntary petition was not filed in good faith if an order for relief is entered). *See also Kaplan v. Breslow (In re WLB–RSK Venture),* 320 B.R. 221, 2004 WL 3119789 at *6 n. 13 (9th Cir. BAP 2004)(unpublished disposition).

When a motion for summary judgment is filed in advance of the close of discovery in litigation, the court always has a discretionary call to make in determining how much discovery to allow or require in advance of its summary judgment determination. Counsel for Mr. Marciano vigorously argued before the bankruptcy court that the Petitioning Creditors' lack of good faith was relevant because 1) two of the three Petitioning Creditors were the most aggressive among the judgment creditors in their collection efforts against Mr. Marciano; 2) the third Petitioning Creditor, Ms. Tagle, joined in filing the Involuntary Petition after her settlement overtures were rebuffed; and 3) the Petitioning Creditors opposed Mr. Marciano's motion for relief from stay to continue his appeals against his judgment creditors, including his appeals of the judgments held by the Petitioning Creditors. He made those same points in his declaration in opposition to the Summary Judgment Motion, further stating that he was advised by counsel for the Petitioning Creditors that they "relied upon counsel's advice in deciding whether to file the [Involuntary Petition]." Declaration of Daniel J. McCarthy in Opposition to the Summary Judgment Motion, at p. 14.

None of these points tends to indicate that further discovery directed to the Petitioning Creditors would raise any *genuine* issues of material fact with respect to the Summary Judgment Motion. We conclude that the bankruptcy court did not abuse its discretion in determining that requiring further discovery on the issue of the Petitioning Creditors' alleged bad faith at this stage in the proceedings would not produce any evidence relevant to its determination of the Summary Judgment Motion. Accordingly, the bankruptcy court could properly limit the scope of discovery pending adjudication of the Involuntary Petition. Limiting the discovery did not preclude Mr. Marciano from defending against the Involuntary Petition. We find no abuse of discretion in the entry of the Protective Order.

D. *The Bankruptcy Court Did Not Abuse Its Discretion When It Declined To Stay Proceedings on the Involuntary Petition Pursuant to § 305.*

"[N]otwithstanding a bankruptcy court's jurisdiction over an involuntary case pursuant to § 303, § 305(a) provides that the bankruptcy court may dismiss an involuntary case, or suspend all proceeding in that case, and thereby decline to exercise jurisdiction." *Macke Int'l Trade,* 370 B.R. at 246. Section 305(a) provides in relevant part:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;....

Mr. Marciano sought such dismissal or suspension of the involuntary case by motion ("Second Dismissal Motion") filed

April 26, 2010,[9] "until such time as the pending appeals by Mr. Marciano from the default judgments held by the petitioning creditors and five other default judgment creditors are resolved." The Second Dismissal Motion was heard by the bankruptcy court at the June 10 Hearing; the order denying the Second Dismissal Motion was entered July 2, 2010.

### 1. Section 305(c) Does Not Preclude This Panel From Considering an Appeal Relating to the Second Dismissal Motion.

As a threshold matter, we recognize that § 305(c) imposes limitations on the appellate review available with respect to orders to grant or deny a motion pursuant to § 305(a). Quoting *In re Paper I Partners, L.P.*, 283 B.R. 661, 678 (Bankr.S.D.N.Y. 2002), in ruling on the Second Dismissal Motion, the bankruptcy court emphasized that "[a]bstention pursuant to section 305 of the Code is a power that should only be utilized under extraordinary circumstances." Tr. of June 10, 2010 H'ring at 32:20–23. One bankruptcy court has clarified that "[d]ismissal pursuant to § 305(a) is an extraordinary remedy, in part because it is generally not appealable beyond the level of the District Court or, in the Ninth Circuit, the Bankruptcy Appellate Panel." *In re Orchards Village Invs., LLC*, 405 B.R. 341, 351 (Bankr.D.Or.2009); *see also Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624 (9th Cir. BAP 1995)("Section 305(c) does not prohibit or restrict appeals to the Panel or the district court, but only further appeals to the circuit courts of appeal and the United States Supreme Court.").

### 2. The Bankruptcy Court Did Not Abuse Its Discretion in Denying Mr. Marciano's Three Requests For a "Stay" Under § 305(a).

Dismissal under § 305(a)(1) is appropriate "only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal." *Eastman*, 188 B.R. at 624.

In the Second Dismissal Motion, Mr. Marciano relied heavily on cases that favor dismissal where an Involuntary Petition was filed as an inappropriate "litigation tactic." *See, e.g., In re Pac. Rollforming, LLC*, 415 B.R. 750, 755 (Bankr.N.D.Cal. 2009); *Profutures Special Equity Fund, L.P. v. Spade (In re Spade)*, 269 B.R. 225, 228–29 (D.Colo.2001). He emphasized that bankruptcy relief would not be necessary, because his state court appeals were "meritorious."

"Before a court may refrain from exercising jurisdiction over an otherwise proper case, it must make specific and substantiated findings that the interests of the creditors and the debtor will be better served by dismissal or suspension." *Macke Int'l Trade*, 370 B.R. at 247. The bankruptcy court made such findings against Mr. Marciano in its ruling on the Second Dismissal Motion. Tr. of June 10, 2010 H'ring at 32:9–42:6. The bankruptcy court agreed with Mr. Marciano that the factors to be considered in a § 305(a) decision are set forth in *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464–65 (Bankr. S.D.N.Y.2008), *citing In re Paper I Partners, L.P.*, 283 B.R. at 678 ("§ 305(a) Factors"). The § 305(a) Factors are:

(1) the economy and efficiency of administration; (2) whether another forum is

---

**9.** Three of the orders on appeal relate to the bankruptcy court's denial of the Second Dismissal Motion: the order denying the Second Dismissal Motion itself, the order denying the motion for reconsideration of the Second Dismissal Motion, and the order denying a second motion for reconsideration.

available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

In applying the § 305(a) Factors, the bankruptcy court found that eight judgment creditors held judgments[10] against Mr. Marciano in an aggregate of more than $260 million; that those judgments were not stayed; that appeals were pending with respect to the judgments; that Mr. Marciano did not have sufficient funds to pay the judgments; and that any unity of interest among the creditors in the state court proceedings had been supplanted by their competing interests in collecting on their individual judgments. The bankruptcy court found compelling the fact that dismissing the case to allow the judgment creditors to pursue their remedies in state court would not address the issue of equality of distribution. The bankruptcy court

observed that Mr. Marciano had obtained relief from the automatic stay[11] to prosecute the state court appeals, and that he could continue to do so, even in the context of a Chapter 11 case. The bankruptcy court found paramount the fact that while Mr. Marciano could pursue the state court appeals inside or outside of a Chapter 11 case, there was no alternate forum to a bankruptcy case which would protect the creditors' rights to equality of distribution.

When asked by Mr. Marciano what findings the bankruptcy court would make in connection with a "stay" of the case under § 305(a) as opposed to a dismissal, the bankruptcy court determined that the factors to consider in deciding whether a "stay" was appropriate were the same as those considered for a dismissal under § 305(a), and that a "stay" was not appropriate in this case where there was no alternative forum to deal with competing efforts to collect judgments.

The bankruptcy court entered its order ("Second Dismissal Order") denying the Second Dismissal Motion on July 2, 2010. While Mr. Marciano has appealed the Second Dismissal Order, he does not challenge the bankruptcy court's decision not to dismiss the involuntary Chapter 11. Instead, his appeal of the Second Dismissal Order relates to the bankruptcy court's refusal to "stay" the involuntary Chapter 11 case pending resolution of the state court appeals,[12] and to his two motions to reconsider the denial of the § 305(a) "stay."

---

**10.** *Marciano*, 446 B.R. at 417. Six judgments were entered against Mr. Marciano, one of which related to three judgment creditors, who are not the Petitioning Creditors.

**11.** Mr. Marciano filed two motions for relief from the automatic stay to allow the appeals of the state court judgments of the Petitioning Creditors and other judgment creditors to proceed, which the bankruptcy court granted by its orders entered March 19, 2010.

**12.** Mr. Marciano filed a motion requesting that the bankruptcy court reconsider its decision not to grant a § 305 injunction; that motion was denied by orders entered on December 29, 2010, and January 10, 2011. These orders are included in this appeal. In his Opening Brief on Appeal, Mr. Marciano asserts that a "stay" under § 305(a) would have avoided significant expenses regarding discovery disputes, cross-motions for summary judgment, and a potential trial. "Be-

### 3. The Bankruptcy Court Did Not Err In Its Application of Section 305(a).

Mr. Marciano asserts on appeal that the bankruptcy court erred as a matter of law in denying his motion for a § 305(a) "stay." Mr. Marciano states that, in effect, the bankruptcy court concluded (1) that the same factors for considering a § 305(a) dismissal also apply to a § 305(a) "stay," and (2) if those factors do not favor a dismissal, they cannot favor a "stay." Mr. Marciano contends that the bankruptcy court erred when it failed to make, in connection with his request for a § 305(a) "stay," independent factual findings as opposed to relying on the same findings it had made in connection with his request for a § 305(a) dismissal. We find no error in the bankruptcy court's application of § 305(a).

In its construction, § 305(a) is similar to other Bankruptcy Code sections that allow the bankruptcy court to determine whether it is appropriate to continue a bankruptcy case or to dismiss it. For example, § 1112(b) allows the bankruptcy court either to convert a Chapter 11 case to a case under Chapter 7, or to dismiss the case entirely. In its application of § 1112(b), a bankruptcy court must first determine whether "cause," as articulated by the statute, exists to change the manner in which the Chapter 11 case is proceeding. Only after finding "cause" does a bankruptcy court reach the issue of what to do with the case. Section 1112(b) offers the choices of conversion to Chapter 7, dismissal, or even the appointment of a trustee or an examiner. In making its choice, the bankruptcy court is directed to evaluate which alternative is in the "best interests of the creditors and the estate." *See Rollex Corp. v. Associated Materials, Inc.*

*(In re Superior Siding & Window, Inc.),* 14 F.3d 240, 242 (4th Cir.1994).

We believe this two-step process also is appropriate in the context of deciding a § 305(a) motion with respect to a pending Involuntary Petition. The bankruptcy court first must make findings that continuing the adjudication of the Involuntary Petition is or is not appropriate. While no specific statutory cause is stated to guide a bankruptcy court, the development of the case law has provided guidance as to the factors to consider. Those were the factors identified in the *Monitor Single Lift* case and applied by the bankruptcy court with respect to the Second Dismissal Motion under the appropriate "totality of the circumstances standard." *See Macke Int'l Trade,* 370 B.R. at 247. Only if the bankruptcy court had determined that adjudication of the Involuntary Petition should not go forward at the time of its decision would it need to consider whether it should dismiss the Involuntary Petition outright or simply "stay" the adjudication of the Involuntary Petition, for instance, until the state court appeals had concluded.

### 4. The Bankruptcy Court's Findings in Support of the Second Dismissal Order Are Not Clearly Erroneous.

Mr. Marciano contends that the bankruptcy court abused its discretion when it failed to suspend the Involuntary Petition under § 305(a). First, he asserts that the bankruptcy court failed to give primary consideration to the first § 305(a) Factor: "the economy and efficiency of administration." We disagree that any of the § 305(a) Factors can be "primary" where the determination of relief under § 305(a) is based on the totality of the circumstances. *See Macke Int'l Trade,*

cause the [bankruptcy court] denied the stay, the parties later incurred the predicted costs. The [bankruptcy court], however, had two

more opportunities to correct its error, but refused to do so." Appellant's Opening Brief at 13:3–19.

370 B.R. at 247. We observe in the record before us on appeal that both before and after it denied the Second Dismissal Motion, the bankruptcy court went to great lengths to address Mr. Marciano's concerns about the economy and efficiency of administration. As early as April, 2010, the bankruptcy court had invited a motion for summary judgment on the agreed facts that it believed would be sufficient to adjudicate the involuntary petition. Many of the costs of administration of which Mr. Marciano complains were incurred as a result of his repeated attempts to continue discovery, as discussed above.

With respect to "efficiency" of administration, Mr. Marciano's concerns sound hollow. There is a "premise that a prompt determination of whether a bankruptcy case is to proceed is needed...." *Kidwell,* 158 B.R. at 210. Mr. Marciano argued before the bankruptcy court that this "policy" is to protect a debtor, because "the debtor is entitled to know sooner rather than later because involuntaries do adversely impact alleged debtors." Tr. of June 10, 2010 H'rng at 12:17–19. However, Mr. Marciano made clear that he did not want a prompt adjudication of the Involuntary Petition. "[I]f you're not going to dismiss the case, at least stay it." *Id.* at 12:20–21. In not challenging the bankruptcy court's refusal to dismiss the Involuntary Petition, but instead filing two motions to reconsider the denial of the § 305(a) "stay" (as well as this appeal only of the denial of the § 305(a) "stay"), Mr. Marciano evinces an intent to have the advantage of the automatic stay without the disadvantages of complying with any of a debtor's duties under the Bankruptcy Code.

Second, Mr. Marciano disputes that no alternative forum was available to determine the parties' interests, pointing to the pending state court appeals. In the context of this case, the third and fourth § 305(a) Factors, *i.e.,* whether federal proceedings are necessary to reach a just and equitable solution, and whether there is an alternative means of achieving an equitable distribution of assets, are sufficiently related to the second § 305(a) Factor that a separate analysis of them is not warranted.

Based on his entrenched position that the judgments of the Petitioning Creditors would not stand on appeal, Mr. Marciano refuses to acknowledge the consequences for the interests of the Petitioning Creditors if the judgments are affirmed on appeal. Mr. Marciano asserts on appeal that because the *Rooker–Feldman* doctrine[13] precludes a federal court's "appellate review" of state court default judgments, the only forum available to resolve the dispute was the state court of appeals. As the bankruptcy court noted, (1) relief from the automatic stay already had been granted to allow the state court appeals to proceed, and (2) even assuming that an order for relief was entered in the bankruptcy case, nothing in the Bankruptcy Code would prevent Mr. Marciano, as a debtor-in-possession, from proposing a plan that would provide for the resolution of his disputes with the Petitioning Creditors by a continuation of the state court appeals.

We note that while Mr. Marciano refused to concede that there might need to be a bankruptcy stay to avoid potential

---

**13.** Pursuant to the *Rooker–Feldman* doctrine, a federal district or bankruptcy court cannot exercise appellate jurisdiction over a challenge to a state court's decision. *See Dubinka v. Judges of the Superior Court,* 23 F.3d 218, 221–22 (9th Cir.1994). Continuation of the proceedings on the Involuntary Petition does not implicate *Rooker–Feldman.* Mr. Marciano obtained relief from stay to pursue the state court appeals independent of the bankruptcy proceedings.

adverse consequences from competing collection activity, in the context of arguing his alternative motion for a "stay" under § 305(a) in the event the bankruptcy court would not dismiss the Involuntary Petition as requested, he acknowledged that if "the goal of ratable distribution and equality of distribution is even at issue in this case, a [§ 305(a) 'stay'] could preserve that...." Tr. of June 10, 2010 H'ring at 12:6–10. In light of the entry of the order for a judgment debtor exam and its resulting lien on Mr. Marciano's assets in favor of two of the judgment creditors, there was no alternative forum that could provide for preservation of lien avoidance rights to ensure equitable distribution of Mr. Marciano's assets among his many judgment creditors.

In his brief on appeal, Mr. Marciano concedes that the fifth and sixth § 305(a) Factors are "least important" in the § 305(a) analysis in this case. Those § 305(a) Factors are whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case, and whether a non-federal insolvency proceeding has gone so far that it would be costly and time consuming to start afresh with the federal bankruptcy process. Mr. Marciano does not ascribe any error to the bankruptcy court's findings with respect to these factors. It is indisputable on the record before us that no non-federal insolvency proceeding has been initiated. With respect to whether the debtor and creditors could work out a less expensive out-of-court arrangement, no such option was brought to the attention of the bankruptcy court. We observe that even if the judgments were reduced in amount by the state court of appeals, there is nothing in this record to suggest that Mr. Marciano would pay them, and plenty to suggest that he would not.

Finally, Mr. Marciano does not assert any error on the part of the bankruptcy court in connection with its finding on the seventh § 305(a) Factor, the purpose for which bankruptcy jurisdiction has been sought. The bankruptcy court found that, notwithstanding Mr. Marciano's contention that the Involuntary Petition had been filed in bad faith, there was no improper motivation on behalf of the Petitioning Creditors to warrant relief to Mr. Marciano under § 305(a).

The filing of an involuntary bankruptcy petition is always a "litigation tactic." Whether the filing is inappropriate is a fact-dependent determination. *See, e.g., In re Pac. Rollforming, LLC,* 415 B.R. at 753–54 (where, among other concerns of the bankruptcy court, one of the three petitioning creditors acquired his claim by purchase one day before the involuntary bankruptcy filing); and *In re Spade,* 269 B.R. at 228 ("The bankruptcy judge found that the involuntary petition was not filed as a means to ensure a fair distribution of the Debtor's assets to all Creditors, but instead, was a self-serving litigation tactic to control the forum and enlist a trustee to conduct and pay for discovery into the Debtor's affairs."). Where, as here, the bankruptcy court expressed a primary concern that the issue of equality of distribution would not effectively be dealt with in any other forum, we conclude that the bankruptcy court did not abuse its discretion in denying the Second Dismissal Motion.

5. *The Bankruptcy Court Did Not Abuse Its Discretion When It Denied Mr. Marciano's Motions for Reconsideration of the Second Dismissal Order.*

Mr. Marciano timely requested reconsideration ("First Motion for Reconsideration") of the Second Dismissal Order, as-

serting that the bankruptcy court failed to make findings with respect to a "stay" under § 305(a), as distinguished from findings with respect to dismissal under § 305(a). The bankruptcy court denied the First Motion for Reconsideration on the basis that applying the § 305(a) Factors did not support a "stay" of the proceedings where the only factor on which Mr. Marciano focused was the economy and efficiency of administration. The bankruptcy court observed that although Mr. Marciano argued that "the interests of the Petitioning Creditors would be better served by suspension because unnecessary expenses would be avoided ... [a]s evidenced by their vociferous objections, the Petitioning Creditors clearly do not believe suspension is in their best interests." The bankruptcy court further noted that Mr. Marciano focused only on the economy of administration, but did not address the "efficiency" of administration. The bankruptcy court concluded that a suspension of the proceedings while the state court appeals were resolved would substantially delay the administration of the Involuntary Petition. *Marciano,* 446 B.R. at 433.

The bankruptcy court entered an order denying the First Motion for Reconsideration contemporaneously with the entry of the Summary Judgment Order and the Order for Relief.

Mr. Marciano promptly filed a new motion for reconsideration ("Second Motion for Reconsideration") on the basis that he had not had sufficient time to review the bankruptcy court's tentative ruling on the First Motion for Reconsideration, which contained much case law not previously cited by the parties, before the bankruptcy court ruled on the First Motion for Reconsideration. The bankruptcy court denied the Second Motion for Reconsideration without a hearing.

Mr. Marciano asserts on appeal that the bankruptcy court abused its discretion when it denied his motions for reconsideration of the Second Dismissal Order.

■ To establish that the bankruptcy court abused its discretion in denying the motions for reconsideration, Mr. Marciano must demonstrate the existence of newly discovered evidence that was not available at the time of the original hearing, or that the bankruptcy court committed clear error or made a decision that was manifestly unjust, or that there was an intervening change in controlling law. *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir.2001).

■ The motions for reconsideration were based neither on new evidence nor on an intervening change in controlling law. Instead, Mr. Marciano asserted that the bankruptcy court had committed clear error when it failed to grant him a "stay" of the proceedings on the Involuntary Petition. We previously have held that the bankruptcy court did not err in its application of the § 305(a) Factors. Accordingly, we conclude that the bankruptcy court did not abuse its discretion when it denied the motions for reconsideration of the Second Dismissal Order.

E. *The Bankruptcy Court Did Not Err When It Granted the Summary Judgment Motion and Entered the Order for Relief.*

Civil Rule 56, applicable in bankruptcy contested matters pursuant to Rules 9014 and 7056, provides that summary judgment is appropriate if "there is no genuine issue as to any material fact," and if "the movant is entitled to judgment as a matter of law." An issue is "genuine" only if there is an evidentiary basis on which a reasonable fact finder could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). A dispute is "material" only if it could affect the outcome of the suit under governing law. *Id.* At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter, but determines whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. 2505.

In the context of determining whether there is a bona fide dispute for purposes of § 303, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much." *Vortex Fishing,* 277 F.3d at 1064. As the bankruptcy court emphasized, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude entry of summary judgment." *Marciano,* 446 B.R. at 420, *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505.

The bankruptcy court identified five elements[14] that the Petitioning Creditors must establish pursuant to §§ 303(b) and (h) in order to prevail on the Summary Judgment Motion and thereby obtain entry of an order for relief against Mr. Marciano:

> (1) three or more creditors (2) hold claims against [Mr. Marciano] that are not contingent as to liability and (3) are not the subject of a bona fide dispute as to liability or amount (4) in the aggregate amount of at least $13,475, and (5) that [Mr. Marciano] is generally not

paying his debts as such debts become due.

*Marciano,* 446 B.R. at 420.

The bankruptcy court determined that only factors three and five were at issue in the Summary Judgment Motion, *i.e.,* whether the Petitioning Creditors' claims were the subject of a bona fide dispute as to liability or amount, and whether Mr. Marciano generally was paying his debts as they become due. The bankruptcy court determined that because (1) Mr. Marciano was not paying the judgment creditors, (2) the evidence in the record reflects that Mr. Marciano did not have sufficient assets to pay the judgments in full, and (3) Mr. Marciano had no plan to pay the judgments, in the totality of the circumstances, Mr. Marciano generally was not paying his debts as they became due. *Marciano,* 446 B.R. at 421. Mr. Marciano does not dispute this determination on appeal, except to assert that because the judgments are in bona fide dispute, they cannot constitute debts that he is not paying as they become due for purposes of § 303.

In essence, therefore, the only element in dispute is whether the claims of the judgment creditors are the subject of a bona fide dispute as to liability or amount.

Typically, in summary judgment proceedings the moving party must present a prima facie case establishing its entitlement to summary judgment. Once that prima facie case has been established, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact that would preclude

---

**14.** The bankruptcy court rejected Mr. Marciano's assertion that the lack of "bad faith" of the Petitioning Creditors in filing the Involuntary Petition also is an element upon which the Petitioning Creditors must prevail. Although Mr. Marciano included this conclusion of the bankruptcy court as an issue on

appeal directed to the order granting the Summary Judgment Motion, because he does not address the issue in the context of the Summary Judgment Motion in his opening brief on appeal, he has waived it for purposes of this discussion.

entry of summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The bankruptcy court held that the Petitioning Creditors' unstayed judgments constituted prima facie evidence that no bona fide dispute existed as to their claims against Mr. Marciano. *Marciano,* 446 B.R. at 422, *citing Platinum Fin. Servs. Corp. v. Byrd (In re Byrd),* 357 F.3d 433, 438 (4th Cir.2004). However, the bankruptcy court also held that "[i]n the context of a sanctions judgment, the policy of deciding disputes on the merits justifies a *per se* rule that such judgments are not the subject of a bona fide dispute." *Marciano,* 446 B.R. at 428.

Mr. Marciano contends that the bankruptcy court erred as a matter of law when it adopted a *per se* rule that precluded him from rebutting the Petitioning Creditors' prima facie case that the state court judgments were not subject to a bona fide dispute. Mr. Marciano also contends that the bankruptcy court erred when it refused to characterize the state court judgments as default judgments. He asserts that because the state court judgments on appeal are default judgments, they are subject to bona fide dispute as a matter of law, regardless of whether they are stayed. Consequently, he contends that the bankruptcy court erred when it entered the Summary Judgment Order and when it entered the Order for Relief.

1. *The Bankruptcy Court Did Not Err When It Concluded That the State Court Judgments Were Not In Bona Fide Dispute As To Liability or Amount.*

Most courts that have considered the issue have held that no bona fide dispute exists with respect to state court judgments where the judgment debtor has not obtained a stay pending appeal. "[A]

claim based upon a judgment, in the absence of a stay, is not subject to a bona fide dispute for purposes of determining whether a petitioning creditor is eligible to commence an involuntary petition." *In re AMC Investors, LLC,* 406 B.R. 478, 481 (Bankr.D.Del.2009); *In re Drexler,* 56 B.R. 960, 967 (Bankr.S.D.N.Y.1986). Reduced to their essence, these rulings implement what has been referred to as the *Butner* principle. In *Butner,* the Supreme Court stated:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (quoting *Lewis v. Manufacturers Nat'l Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)).

As a general rule, an unstayed state court judgment is subject to enforcement procedures by the judgment creditor. California law, which determines the enforceability of the state court judgments at issue, is in accord with the general rule. "Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for ... money or the payment of money." Cal. Code. Civ. P. § 917.1(a)(1). "The filing of an involuntary petition is but one of many means by which a judgment creditor may seek to attempt collection of something

upon its judgment." *Drexler*, 56 B.R. at 967.

■ Mr. Marciano points out that the Fourth Circuit has declined to follow the majority approach, on the basis that substantial questions may remain about a debtor's liability, notwithstanding judgments in a creditor's favor. *See In re Byrd*, 357 F.3d at 438. However, under *Byrd*, "a debtor's subjective beliefs do not give rise to a bona fide dispute." *Id.* at 440. It is not enough for an alleged debtor simply to refuse to concede the validity of a petitioning creditor's claim. Instead, to assert that a debt is in bona fide dispute, a debtor must present evidence to support his factual and legal arguments. *Id.* "Indeed it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments." *Id.* at 438. Mr. Marciano asserts that the bankruptcy court should have followed the *Byrd* approach and allowed him an opportunity to rebut the Petitioning Creditors' prima facie case.

■ We disagree. In the Ninth Circuit, for purposes of § 303, a bona fide dispute requires an *objective* basis for either a factual or a legal dispute as to the validity of the debt. *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d at 1064. The *AMC Investors* court viewed *Byrd's* requirement to conduct an inquiry into the likelihood of success on appeal to be unnecessarily intrusive into the trial court's ruling and "undermines the objective analysis of bona fide disputes." *In re AMC Investors, LLC*, 406 B.R. at 485. "*Byrd* turns the court into an odds maker on appellate decision-making," *id.*, and appears to be fundamentally at odds with the statutory requirement to apply "full faith and credit" to state court judgments. *See* 28 U.S.C. § 1738. The *AMC Investors*

court also noted the essential difficulty in implementing *Byrd's* analytical approach:

> The inherent difficulty and lack of necessity in engaging in such analysis is borne out by *Byrd* itself, as the court only made a cursory examination into the pending appeals, finding the alleged debtor presented no evidence to support his likelihood of success on appeal and, thus, "failed to raise any substantial factual or legal questions about the continued viability of those judgments."

*In re AMC Investors, LLC*, 406 B.R. at 485 (quoting *In re Byrd*, 357 F.3d at 438).

The *AMC Investors* court further observed that the *Byrd* court's rejection of the majority approach was based upon an incorrect interpretation of the definition of "claim" under § 101(5), specifically, that the entry of a judgment does not create a right to payment. *Id.* at 486.

> The *Byrd* court reads the phrase "whether or not such right is reduced to judgment" to mean that the definition of claim "permits some creditors who have not reduced their claims to judgment to file involuntary petitions, *just as it prevents other creditors who have reduced their claims to judgment from filing.*" While this court agrees that the relevant language clarifies that a right to payment may exist even if it has not been reduced to judgment; it disagrees that the entry of a judgment does not create a right to payment.

*Id.* (quoting *In re Byrd*, 357 F.3d at 438) (emphasis in original). We agree.

■ Ultimately, whether one characterizes the conclusion as a "per se" rule, we conclude, consistent with the holding in *AMC Investors* and the majority of courts that have considered the issue, including the bankruptcy court in this case, that an unstayed judgment, other than a default judgment, that is regular on its face, is "in and of itself, sufficient to establish that the

claim underlying the judgment is not in bona fide dispute for purposes of determining whether a petitioning creditor is eligible" to initiate an involuntary bankruptcy case. *In re AMC Investors, LLC,* 406 B.R. at 487. *See also C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.),* 431 B.R. 307, 2009 WL 4798264 *5 (10th Cir. BAP 2009) ("This Court declines to adopt the *Byrd* approach for the reasons so articulately and convincingly set forth by the Delaware Bankruptcy Court in *In re AMC Investors, LLC.*"), *rev'd on other grounds,* 636 F.3d 1257 (10th Cir. 2011).

### 2. *The State Court Judgments Are Not Default Judgments.*

■ The courts that have adopted the general rule that unstayed state court judgments are not in bona fide dispute have not dealt with default judgments. *See, e.g., In re AMC Investors, LLC,* 406 B.R. at 487 (explicitly excludes default judgments from the scope of its ruling, preserving the issue for determination in an appropriate future dispute); *In re Drexler,* 56 B.R. at 964. Conversely, where a default judgment is involved, a bankruptcy court is unlikely to apply a *per se* rule in considering whether the underlying claim is in bona fide dispute. *See, e.g., In re Starlite Houseboats, Inc.,* 426 B.R. 375 (Bankr.D.Kan.2010); *In re Henry S. Miller Comm'l, LLC,* 418 B.R. 912, 921 (Bankr.N.D.Tex.2009); *In re Graber,* 319 B.R. 374, 379–80 (Bankr.E.D.Pa.2004); *In re Prisuta,* 121 B.R. 474, 476 (Bankr. W.D.Pa.1990). Mr. Marciano contends even if a *per se* rule is appropriate to unstayed state court judgments entered on the merits, the bankruptcy court inappropriately applied the *per se* rule to the Petitioning Creditors' judgments, which he characterizes as default judgments.

The bankruptcy court ruled that the judgments at issue were not "default judgments" in the classic sense. Instead, they were judgments resulting from the imposition of discovery sanctions. They did not result from Mr. Marciano's mere failure to appear in the state court litigation; they were the result of his "inappropriate and dilatory conduct" in that litigation. *Marciano,* 446 B.R. at 428. While acknowledging the policy considerations favoring resolution of disputes on the merits, the bankruptcy court stated that because terminating sanctions only are awarded against parties whose abuse of the discovery process continues notwithstanding the imposition of lesser sanctions, terminating sanctions "advance the truth-seeking function of litigation by prodding parties to fulfill their discovery obligations." *Id., citing Del Junco v. Hufnagel,* 150 Cal. App.4th 789, 60 Cal.Rptr.3d 22, 29 (2007). The bankruptcy court held that a determination that a judgment based on terminating sanctions was subject to bona fide dispute would reward Mr. Marciano's conduct which thwarted the policy of settling disputes on the merits. *Marciano,* 446 B.R. at 428.

We agree that under the facts of this case, Mr. Marciano is estopped from asserting that the state court judgments are in bona fide dispute on the basis that he was precluded from presenting a defense to the claims of the Petitioning Creditors. Under California law, in an appeal from a judgment entered following the imposition of terminating sanctions, review is "limited to questions of jurisdiction, sufficiency of the pleadings and excessive damages, if the damages awarded exceed the sum sought in the complaint." *See Steven M. Garber & Assoc. v. Eskandarian,* 150 Cal. App.4th 813, 824, 59 Cal.Rptr.3d 1 (Cal. App.2d Dist.2007). The standard for review with respect to an order imposing terminating sanctions is "abuse of discre-

tion." *Collisson & Kaplan v. Hartunian,* 21 Cal.App.4th 1611, 1620, 26 Cal.Rptr.2d 786 (Cal.App.2d Dist.1994). Contrary to the assumption implicit in the dissent, it is unlikely that Mr. Marciano's appeals of the state court judgments against him will reach the merits of his defenses. Rather, they necessarily will focus on the claimed abuses of the trial court in sanctioning Mr. Marciano's conduct in discovery. To the extent the dissent implies that we can go behind a state court's terminating sanctions orders to find a bona fide dispute, we disagree.

Mr. Marciano participated actively in the state court litigation that ultimately resulted in the judgments being entered against him. Only after repeated discovery abuses by Mr. Marciano, for which he was repeatedly sanctioned, were his answers to cross-complaints stricken. Thereafter, damages were determined by a jury, and judgments were entered by the state court, after the jury awards were reduced so that the damages did not exceed the amounts demanded in each cross-complaint. *See Marciano,* 446 B.R. at 414–17. These are not the types of "default" judgments, based on the lack of any response to a complaint, that appropriately are subject to reexamination to determine whether they are in "bona fide" dispute for § 303(b) purposes. *See, e.g., In re Drexler,* 56 B.R. at 963–64 (where a judgment based on the imposition of discovery sanctions was determined not to be a default judgment: "The Sanctions Judgment is not a default judgment insofar as it grants sanctions and directs the striking of the answer and counterclaim.").

F. *Post–"Order for Relief" Stay Issues.*

After the bankruptcy court entered the Order for Relief, Mr. Marciano immediately filed an ex parte application ("Stay Application") for a 30–day stay of the Order for Relief to excuse him from fulfilling the duties of a Chapter 11 debtor while the bankruptcy court considered the pending motions he had filed requesting reconsideration of the Summary Judgment Order and the Order for Relief. The Stay Application also requested the imposition of a § 305(a) "stay" in the context of the now-pending Chapter 11 case. In the Stay Application, Mr. Marciano again stressed the § 305(a) Factors of (1) economy and efficiency of administration and (2) the availability of the state court of appeals as an alternate forum to resolve the disputes between the parties.

On January 11, 2011, Mr. Marciano filed an emergency motion for temporary stay and for stay pending appeal ("Stay Motion"). At that time, the bankruptcy court had not yet ruled on the Stay Application. The Stay Motion appears to restate and expand upon the Stay Application, and requested relief in the form of a stay of the Order for Relief pursuant to § 305(a), Rule 8005, Civil Rule 62 as applicable in the bankruptcy case pursuant to Rule 7062, and "the Court's inherent authority."

In the Stay Motion, Mr. Marciano asserted that in light of his pending appeal, the bankruptcy court was divested of jurisdiction over the Order for Relief, and therefore over any proceedings in the Chapter 11 case. He asserts that because he has appealed the Order for Relief, the bankruptcy court

> may not require Mr. Marciano to (1) file schedules and a statement of financial affairs pursuant to [Rule] 1007(a)(2); (2) attend a meeting of creditors pursuant to [§ ] 341(a); (3) close prepetition bank accounts under the U.S. Trustee's Guidelines applicable to Chapter 11 debtors; (4) otherwise meet the U.S. Trustee's requirements under those guidelines; (5) seek Court approval of employment of counsel and accountants;

(6) seek Court approval for Mr. Marciano to use estate assets to pay expenses and the related concerns raised under the Thirteenth Amendment's proscription against involuntary servitude, if approval is denied or limited in any manner; and (7) incur the huge expense of meeting all such obligations. The Court also may not enter orders on other matters that may come up, such as (1) a motion for a Rule 2004 exam; (2) proceedings relating to any of the above-described obligations that Mr. Marciano might not fulfill in the expected manner, regardless of the reason; and (3) various motions that the default judgment holders may file in a further attempt to interfere with the pending appeals, such as motions to convert or to appoint a Chapter 11 trustee.

After a hearing, the bankruptcy court granted the Stay Motion only to the extent of granting a temporary stay pending appeal for 30 days to allow Mr. Marciano to seek a stay pending appeal from this Panel. With the exception of granting the temporary stay, the bankruptcy court denied the Stay Motion.

The bankruptcy court determined it had continuing jurisdiction over the Chapter 11 case notwithstanding the pending appeal of the Order for Relief.

In ruling on the Stay Motion, the bankruptcy court first determined that where the Order for Relief had been entered, the focus of the proceedings no longer was just on preserving avoidance causes of action; it now included preserving assets of the estate. Because preserving assets of the estate required disclosure of those assets, a stay of the Chapter 11 case and Mr. Marciano's duties as a debtor-in-possession was not appropriate under the § 305(a) Factors.

Finally, the bankruptcy court determined that granting a stay pending appeal, either pursuant to Rule 8005 or Civil Rule 62, was not appropriate where continuing the Chapter 11 case would not cause Mr. Marciano irreparable harm; conversely, the bankruptcy court determined that a stay pending appeal would cause substantial harm to the appellees (the Petitioning Creditors) because they would know neither Mr. Marciano's financial status during the pendency of a stay nor whether he was dissipating assets of the bankruptcy estate. Finally, the bankruptcy court found that it would be in the public interest to preserve the ability of creditors, of which there may be many, to obtain repayment of their debts, including the judgments which precipitated the case.

Mr. Marciano includes in his amended statement of issues on appeal three issues which appear to relate to the Stay Motion:

17. Whether the Bankruptcy Court lost jurisdiction in Mr. Marciano's involuntary Chapter 11 case upon Mr. Marciano filing a notice of appeal from the Court's order for relief such that the case could not proceed before the Bankruptcy Court?

18. Once the order for relief was entered on December 28, 2010, did the Bankruptcy Court erroneously deny Mr. Marciano's motion to stay the Chapter 11 case under 11 U.S.C. § 305(a) to allow the pending State Court appeals from the default judgments held by petitioning creditors and others to be resolved and to allow the appeal from the order for relief and other orders of the Bankruptcy Court to proceed before Mr. Marciano is required to comply with requirements applicable to Chapter 11 debtors in possession and to comply with other applicable rules, statutes and orders?

19. Did the Bankruptcy Court erroneously deny Mr. Marciano's motion for a stay pending appeal under Rule 8005 of

the Federal Rules of Bankruptcy Procedure and Rule 62 of the Federal Rules of Civil Procedure, as potentially made applicable by Rule 7062 of the Federal Rules of Bankruptcy Procedure?

In his Opening Brief on Appeal, Mr. Marciano points out that after the Order for Relief was entered he "brought the motion again as part [sic] his emergency stay motion." He summarizes his concerns for not obtaining a stay under the § 305(a) Factors. He concludes that incurring expenses in the Chapter 11 case until the state court appeals are resolved "made no sense, yet the Court denied the renewed motion out of hand by order entered January 10, 2011. That was an abuse of discretion."

The order to which he refers is not the order on the Stay Motion.[15] Instead, it is the order denying the second motion for reconsideration of the Second Dismissal Order. Nowhere in his Opening Brief does Mr. Marciano articulate any alleged error of the bankruptcy court in denying the Stay Motion. Accordingly, he has waived review of that order on appeal. *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 410 (9th Cir. BAP 2005), *aff'd*, 564 F.3d 1052 (9th Cir.2009); *see also O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989).

## VI. CONCLUSION

The bankruptcy court did not err when it concluded that the judgments held by the Petitioning Creditors were not default judgments, but instead were judgments based on terminating sanctions resulting from Mr. Marciano's repeated discovery abuses in the state court litigation. Neither did the bankruptcy court err when it determined that judgments based on terminating sanctions are not in bona fide dispute for purposes of § 303, or when it entered the Summary Judgment Order and the resulting Order for Relief. The bankruptcy court properly asserted jurisdiction over the Involuntary Petition. Finally, the bankruptcy court did not abuse its discretion through its orders with respect to the discovery process in the proceedings before it, nor when it refused to dismiss or stay the proceedings on the Involuntary Petition.

Accordingly, with respect to the issues before us in this appeal, we AFFIRM the orders of the bankruptcy court.

MARKELL, Bankruptcy Judge, dissenting.

I respectfully dissent. I believe the majority incorrectly applies or adopts the law on at least two points. Initially, I think it is incorrect and bad policy to adopt a "per se" rule regarding undisputed claims. Next, I believe the majority opinion improperly and incorrectly limits good faith principles with respect to the commencement and conduct of involuntary cases.

**Adoption of the "Per Se" Rule as to Disputed Claims**

The majority adopts a per se rule that an unstayed state court judgment conclusively determines that there is no bona fide dispute as to the debtor's liability for the debt underlying the judgment, even if the debtor has taken an appeal from that judgment and that appeal is pending. Given the distinctly federal policies embodied in Section 303, and especially under the facts present here, I disagree that Section 303 requires, and Congress intended, such an inflexible rule.

15. The Stay Motion was heard by the bankruptcy court on January 24, 2011; the order on the Stay Motion was entered January 25, 2011.

The first court to adopt the per se rule was *In re Drexler*, 56 B.R. 960 (Bankr. S.D.N.Y.1986). *Drexler* held that a claim represented by an unstayed final judgment never can be the subject of a bona fide dispute, even if subject to a pending appeal. *Id.* at 967. *Drexler* reasoned that precluding judgment creditors from filing involuntary petitions merely based on the pendency of an appeal would render involuntary petitions out of step with other debt collection remedies, because these other remedies may be utilized by holders of unstayed final judgments, even while their judgments are subject to appeals. *Id.* In *Drexler's* own words:

> It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a "bona fide dispute" within the meaning of Code § 303.

*Id.* (footnote omitted).

While several other courts have adopted *Drexler's* per se rule,[1] the Fourth Circuit Court of Appeals rejected it as unpersuasive. *Platinum Fin. Serv. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004). Other courts are in accord. *See e.g., In re Starlite Houseboats, Inc.*, 426 B.R. 375 (Bankr.D.Kansas 2010); *In re Henry S. Miller Commercial, LLC.*, 418 B.R. 912, 920–23 (Bankr.N.D.Tex.2009); *see also In re Prisuta*, 121 B.R. 474 (Bankr.W.D.Pa.1990).

While *Byrd* acknowledged the general enforceability of unstayed judgments, *Byrd* noted that nothing in § 303, or in the Bankruptcy Code as a whole, mandated that holders of unstayed final judgments be entitled to file involuntary petitions while their judgments are subject to appeal. As stated in *Byrd*, "the Code does not make the existence of a bona fide dispute depend on whether a claim has been reduced to judgment." *Id.* After considering the underlying purpose of the bona fide dispute clause in § 303(b), to prevent creditors from coercing debtors into settlement of legitimately disputed claims based on the threat of involuntary bankruptcy,[2] *Byrd* concluded that the per se rule was inappropriate. Rather, *Byrd* ruled that the unstayed final judgment was prima facie evidence that no bona fide dispute existed. The presumption arose upon presentation of the judgment, and the burden then shifted to the alleged debtor to demonstrate the existence of a bona fide dispute by presenting evidence of substantial legal or factual questions. *Id.* at 438–40.

1. *See In re AMC Investors, LLC*, 406 B.R. 478, 484 n. 20 (Bankr.D.Del.2009) (listing cases). *But see* 2 *Collier on Bankruptcy* ¶ 303.11[1] n. 28 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (listing cases reaching conflicting results).

2. The legislative history is thin on the addition of "bona fide dispute" to the statute. *Drexler* identified the following statement by its proponent, Senator Max Baucus of Montana, as the only relevant legislative history:

> The problem can be explained simply. Some courts have interpreted Section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings....
>
> I believe this amendment although a simply [sic] one is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion....

*In re Drexler*, 56 B.R. at 966 (quoting 130 Cong. Rec. 17,151 (1984) (statement of Sen. Max Baucus)).

The controversy over the per se rule has continued after *Byrd*. The Delaware bankruptcy court in *In re AMC Investors, LLC,* 406 B.R. at 484–87, rejected *Byrd* and instead followed *Drexler*. *AMC Investors* offered several different grounds for rejecting *Byrd*. According to *AMC Investors, Byrd's* approach "was unnecessarily intrusive into the trial court's ruling and undermine[d] the objective analysis of bona fide disputes." *Id.* at 485. *AMC Investors* further determined that *Byrd* required an analysis of the debtor's asserted factual and legal issues that was difficult and unnecessary, and that *Byrd's* analysis rendered "the entry of a judgment completely irrelevant in determining the existence of a claim." *Id.* at 485–86. *AMC Investors* also asserted that *Byrd* conflicted with *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), which held that the underlying rights of parties in bankruptcy cases generally are created and defined by applicable nonbankruptcy law. As *AMC Investors* put it:

> [t]he analysis in *Byrd* runs counter to the *Butner* principle, which provides that, *in the absence of a specific provision to the contrary,* bankruptcy courts take non-bankruptcy rights and laws as they find them.

*AMC Investors,* 406 B.R. at 486 (emphasis added).[3] Finally, *AMC Investors* stated that *Byrd's* approach undermined the objective test for discerning bona fide disputes.

I find the reasoning of both *Drexler* and *AMC Investors* to be unpersuasive. Both cases disregard the plain meaning of Section 303(b)'s term "bona fide dispute." Subsequent to both *Drexler* and *AMC Investors,* the Supreme Court has emphasized that, when Congress does not define a term, we must look first at its ordinary meaning. *Ransom v. FIA Card Servs., N.A.,* —— U.S. ——, 131 S.Ct. 716, 724, 178 L.Ed.2d 603 (2011); *Hamilton v. Lanning,* —— U.S. ——, 130 S.Ct. 2464, 2471, 177 L.Ed.2d 23 (2010). The key portion of the term in question is "bona fide" which generally means "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine." *Black's Law Dictionary* 199 (9th ed. 2009). *See also Oxford English Dictionary* ("bona fide" means "in good faith, with sincerity; genuinely.") (last visited Sept. 13, 2011), http://www.oed.com/view/Entry/21238?.[4]

Courts construing § 303 generally have interpreted "bona fide dispute" according to its secondary meaning—focusing on genuineness rather than on subjective good faith. *See, e.g., In re Vortex Fishing Systems, Inc.,* 277 F.3d at 1064–65. I do not take issue with that focus. But *Drexler* and *AMC Investors* would have us ignore the ordinary meaning of the term altogether. Both cases would replace the terminology chosen by Congress with something else, something fashioned from the courts' understanding of when judgment creditors should be entitled to file an involuntary bankruptcy, rather than attempting to discern Congress's understanding based on the language it used.

So long as the plain meaning of the statute does not lead to absurd results, our only task is to apply the statute as worded. *Lamie v. U.S. Trustee,* 540 U.S. 526, 538,

---

3. *AMC Investors* also argued that *Byrd* misconstrued the definition of claim (*see* § 101(5)). Because my analysis does not turn upon the definition of claim, I do not address this argument.

4. The dictionary definition of bona fide perhaps could justify a subjective, good faith standard for determining whether a bona fide dispute exists—a standard rejected by most circuits, including the Ninth Circuit. *See Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1064 (9th Cir.2002) (listing cases).

124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). If Congress actually meant to exclude unstayed judgments on appeal from the category of claims subject to bona fide dispute, it is Congress's sole prerogative to amend its statute to conform with its actual intent. *Id.* at 542, 124 S.Ct. 1023. As we recently stated,

> in the argot of statutory interpretation, we will not read into a statute additional words or terms, so as to expand or contract the statute's coverage, when the plain language of the statute as written is neither absurd nor leads to absurd results.

*Meyer v. Scholz (In re Scholz)*, 447 B.R. 887, 894 (9th Cir. BAP 2011) (citing *Lamie*, 540 U.S. at 538, 124 S.Ct. 1023).

This is precisely the problem with *Drexler* and *AMC Investors*. Both substitute their judgment of how involuntary bankruptcies should commence for that of Congress, as expressed in § 303(b). *Ransom, Hamilton* and *Lamie* undermine most of *Drexler's* and *AMC Investors'* grounds for interpreting claims subject to "bona fide dispute" as excluding unstayed judgments on appeal. *Drexler* focused on keeping involuntary bankruptcies in step with non-bankruptcy collection remedies available to judgment creditors, and *AMC Investors* focused on the purportedly sacrosanct nature of state court judgments and interests created by state law. But numerous provisions of the Bankruptcy Code alter and affect nonbankruptcy remedies, interests and judgments. The powers of the bankruptcy trustee to assume or reject executory contracts (*see* § 365), to sell property free and clear of liens when subject to dispute (*see* § 363(f)(4)), and to obtain credit secured by senior or equal liens on property of the estate already encumbered (*see* § 364(d)) are but a few of the Bankruptcy Code provisions that can significantly alter the rights and duties of parties from that set forth under nonbankruptcy law. Similarly, aspects of the automatic stay (*see* § 362) and claims estimation procedure (*see* § 502(c)) can drastically change the playing field from outside of bankruptcy. *Drexler* and *AMC Investors* offer no reason at all, let alone a persuasive one, why Congress could not move away from the nonbankruptcy playing field by precluding *all* holders of claims subject to bona fide dispute from filing an involuntary bankruptcy petition.

Nor is *AMC Investors'* other reasoning compelling. *AMC Investors* opined that it is both unnecessary and difficult for bankruptcy courts to have to analyze whether there is any genuine factual or legal issue raised in an appeal from a unstayed judgment. But that necessity was determined by Congress, and it is not the court's role to second-guess that necessity. As for difficulty, "[t]he bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *Byrd*, 357 F.3d at 437.

Even if I agreed that this analysis could be complicated, the difficulty of that analysis does not obviate our duty to undertake it as necessitated by the statute. Courts regularly undertake complex, time-consuming analyses as the result of provisions in procedural rules or statutes. *See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (adopting fact-intensive, case-by-case test for determining excusable neglect under Rule 9006(b)); *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir.1982) (adopting a totality of the circumstances test for determining good faith under § 1325(a)(3)). In short, *AMC Investors'* assessment of the necessity or difficulty of applying the plain meaning of a provision of the Bankruptcy Code does not give this court or any other court license to depart from the statute.

Finally, *AMC Investors* complained that *Byrd's* approach served to undermine the objective test that most courts have adopted, including the Ninth Circuit in *Vortex*. *AMC Investors* appears to conflate a case-by-case inquiry with a subjective approach. While the existence of a genuine issue of fact or a defensible legal argument might be some evidence of subjective good faith, the two are not equivalent, and the existence of factual or legal issues just as easily could support an objective determination that the claim is subject to bona fide dispute.

The facts of this case underscore the need to hew to the statute's words. The massive judgment against Marciano is not a judgment on the merits of petitioning creditors' claims, but rather an unprecedented sanction for Marciano's conduct with respect to the determination of those claims. The only reason that there is no dispute is that the state court *precluded* Marciano from defending himself by striking his answer and entering judgment as if he had made no appearance at all. Simply put, Marciano undisputedly disputes the claim; it is just that the state court muzzled him.

*Byrd* recognized that it would be "the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments." *Byrd*, 357 F.3d at 438. But if ever there were a case in which the debtor could claim a dispute, this would be it. And slavishly honoring the state-court sanctions judgment here introduces strategic considerations for future petitioning creditors. If such future creditors can convince a state court to enter a judgment by default or as sanctions, they can effectively dismantle the alleged debtor's assets through an adroit use of Section 303, usually in a manner that is more advantageous to them than if they simply were left to the remedies afforded state-court judgment

creditors. Coupled with the size of the judgment against Marciano, which effectively precluded a bond and thus a stay, the majority effectively gives the petitioning creditors more than they would have under applicable state law collection alternatives. This cannot be the proper reading of Section 303(b).

The majority's reasoning in this case is entirely derivative of *Drexler* and *AMC Investors*. For the reasons set forth above, I reject that reasoning and would reject the per se rule, in favor of the approach adopted in *Byrd*, which held that an unstayed judgment on appeal is prima facie evidence that the claim in question is not subject to bona fide dispute, and that presentation of the judgment shifts the burden to the alleged debtor to demonstrate that genuine issues of fact or law have been raised in the appeal.

### Bad Faith Filing of an Involuntary Petition

The majority also refuses to recognize the fundamental rule that good faith is essential for any filing in federal court. The majority would permit a bad faith filing of an involuntary petition so long as the numerical and other mechanical requirements of Section 303(b) are met. Because of the long tradition of requiring good faith to initiate any proceeding in federal court, I also dissent on this ground.

In considering whether a bankruptcy filing was appropriate, bankruptcy courts have broad discretion to examine the equity of the bankruptcy filing and to compare the motivation underlying the subject bankruptcy filing with the purposes behind the enactment of chapter 11. *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.1994); *In re Van Owen Car Wash, Inc.*, 82 B.R. 671, 673–74

(Bankr.C.D.Cal.1988).[5] The weight of authority indicates that these considerations and principles apply to involuntary cases as well, especially in the case of collusive filings. *See, e.g., In re Bicoastal Holding Co.,* 402 B.R. 916, 919–21 (Bankr.M.D.Fla. 2009); *In re Sul,* 380 B.R. 546, 555 (Bankr. C.D.Cal.2007); *In re Winn,* 49 B.R. 237, 239 (Bankr.M.D.Fla.1985). As *Collier* states, "[I]t is generally agreed that involuntary filings must be in good faith and that consequences flow if they are not. *Dismissal is one possible consequence.*" 2 *Collier on Bankruptcy* ¶ 303.16 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2011) (Emphasis added.).[6]

As stated in *Van Owen Car Wash,* "[t]he legislative history of § 1112(b) indicates Congress' intent that the bankruptcy court retain broad equitable powers to dismiss petitions; '[t]he court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *Id.* (quoting H.R.Rep. No. 95–595, at 405–06 (1977), 1978 U.S.C.C.A.N. 5963, 6362 and S.Rep. No. 95–989, at 117–18 (1978), 1978 U.S.C.C.A.N. 5787, 5903). *Van Owen Car Wash* further emphasized that good faith should " 'be viewed as an implicit prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Code.'" *Id.* at 674 (quoting *In re Victory Const. Co., Inc.,* 9 B.R. 549, 558 (Bankr.C.D.Cal. 1981)).

Yet the majority upholds the bankruptcy court's "staging" of discovery so as to effectively prevent Marciano from taking discovery concerning the petitioning creditors' good faith. The underlying purpose of an involuntary bankruptcy filing always is relevant and may be grounds for dismissal if it amounts to an abuse of the bankruptcy process. *See, e.g., In re Bicoastal Holding Co.,* 402 B.R. at 919–21; *In re Sul,* 380 B.R. at 555; *In re Winn,* 49 B.R. at 239. Without giving Marciano an opportunity to take discovery, the bankruptcy court committed reversible error by incorrectly and prematurely determining that Marciano could not adduce facts showing that the petitioning creditors had abused the bankruptcy process.

In short, unlike the majority, I believe that the subjective motivations underlying the involuntary bankruptcy filing are relevant even before entry of the order for relief. To hold otherwise undermines the broad discretion that Congress gave to the bankruptcy courts to investigate on a case-by-case basis the propriety of bankruptcy filings (whether voluntary or involuntary), to do equity, and to ensure that bankruptcies filed for improper purposes are dispensed with in an expeditious manner.

**Conclusion**[7]

For the reasons stated above, I respectfully dissent.

---

**5.** In this regard, I believe that Section 1112(b) applies to this involuntary chapter 11 proceeding. That section requires "cause" in order to dismiss, and it is beyond cavil that a lack of good faith in filing can constitute such "cause." *See, e.g., In re SGL Carbon Corp.,* 200 F.3d at 160. For background on the good faith filing requirement in chapter 11, *see* Ali M.M. Mojdehi & Janet Dean Gertz, *The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of a Rationale?,* 14 Am. Bankr.Inst. L.Rev. 143 (2006).

**6.** Although this section of *Collier* nominally deals with bad faith in the context of Section 303(i), the listing of dismissal as a consequence of a bad faith filing logically precedes any determination of damages under Section 303(i), and thus it recognizes that bad faith alone can support dismissal of an involuntary petition.

**7.** Although I also have concerns about the entry of an order for chapter 11 relief against an unwilling individual debtor, the record here does not adequately develop facts related

to those concerns. Accordingly, I will just note that involuntary chapter 11 cases against individuals may raise serious constitutional issues. *See generally* Margaret Howard, *Bankruptcy Bondage*, 2009 U. Ill. L.Rev. 191; Erwin Chemerinsky, *Constitutional Issues Posed in the Bankruptcy Abuse and Consumer Protection Act of 2005*, 79 Am. Bankr.L.J. 571, 586–88 (2005).