**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )     BAP No.   NV-14-1593-FBD
                                    )
PAUL A. MORABITO,                   )     Bk. No.   13-51237-GWZ
                                    )
              Debtor.               )
_____)
                                    )
PAUL A. MORABITO,                   )
                                    )
              Appellant,            )
                                    )
v.                                  )     **MEMORANDUM**[*]
                                    )
JH, INC.; JERRY HERBST;             )
BERRY-HINCKLEY INDUSTRIES,          )
                                    )
              Appellees.            )
_____)

Submitted Without Oral Argument on May 19, 2016

Filed – June 6, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gregg W. Zive, Bankruptcy Judge, Presiding

Appearances:     Cecilia Lee and Elizabeth High of Lee & High, Ltd.
                 on brief for Appellant Paul A. Morabito; Gerald M.
                 Gordon, Brian R. Irvine, Gabrielle A. Hamm, and
                 Mark M. Weisenmiller of Gordon Silver on brief for
                 Appellees JH, Inc., Jerry Herbst, and Berry-
                 Hinckley Industries.

---

     [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

Before: FARIS, BARASH,[**] and DUNN, Bankruptcy Judges.

## INTRODUCTION

Appellees JH, Inc., Jerry Herbst, and Berry-Hinckley Industries filed an involuntary chapter 7[1] petition against Appellant Paul A. Morabito in the United States Bankruptcy Court for the District of Nevada. Mr. Morabito appeals the bankruptcy court's decisions to (1) decline to dismiss the involuntary petition and instead suspend the case; (2) lift the suspension of the involuntary petition; and (3) grant summary judgment in favor of Appellees and enter an order for relief. We AFFIRM.

## FACTUAL BACKGROUND

### A. The underlying dispute

This case arises from a business dispute between Appellees and Mr. Morabito and his associated entities. In 2007, JH, Inc. agreed to purchase the stock of Berry-Hinckley Industries from P.A. Morabito & Co. Ltd. Mr. Herbst guaranteed JH, Inc.'s obligations, and Mr. Morabito was the guarantor for P.A. Morabito & Co.

Thereafter, a dispute arose between the parties, and the Morabito parties filed suit against the Herbst parties in Nevada state court. The Herbst parties filed numerous counterclaims against the Morabito parties.

---

[**] Hon. Martin R. Barash, United States Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

2

After a bench trial in 2010, the state court found that the Morabito parties breached the stock sale agreement and engaged in fraud in the inducement and misrepresentation regarding the transaction. It awarded the Herbst parties $149,444,777.80 in compensatory and punitive damages. The Morabito parties filed an appeal with the Nevada Supreme Court, and the Herbst parties filed counter-appeals.

While the case was on appeal, the parties executed a settlement agreement in November 2011. The parties agreed to dismiss the state court action with prejudice, and the Herbst parties agreed to accept (1) $13,000,000 in cash; (2) assumption by the Morabito parties of obligations of a commercial lease and a $4,500,000 note; (3) indemnification in related litigation; and (4) proceeds from the sale of Mr. Morabito's residence.

Additionally, the Morabito parties agreed to execute a Confession of Judgment in the amount of $85,000,000 and Stipulation to Confession of Judgment. Therein, Mr. Morabito admitted that he had acted in bad faith and committed fraud, including fraudulently inducing JH, Inc. to purchase Berry-Hinckley Industries. If the Morabito parties breached the settlement agreement, the Herbst parties could file the Confession of Judgment in state court.

The Morabito parties defaulted under the settlement agreement by failing to make timely payments. The parties then entered into a forbearance agreement in which the Morabito parties admitted that they defaulted on various provisions of the settlement agreement and agreed to make payments to the Herbst parties totaling $875,000. However, the Morabito parties

3

defaulted on the forebearance agreement. The Herbst parties filed the Confession of Judgment in the state court.

**B.    The involuntary petition and motion to dismiss**

Appellees filed an involuntary chapter 7 petition against Mr. Morabito. Relying on the Confession of Judgment and the Stipulation to Confession of Judgment, Appellees asserted that they held claims against Mr. Morabito totaling $77,000,000.

In response, Mr. Morabito filed a Motion to Dismiss Involuntary Chapter 7 Petition ("Motion to Dismiss"). He essentially argued that: (1) the case did not satisfy § 303(b); (2) the petition was filed in bad faith; and (3) the court should abstain under § 305(a). He stated that he had "no significant debts on the Petition Date other than credit card debt and the obligation to [Appellees,]" but admitted that he had more than twelve creditors. He represented that "[w]ith the exception of the obligations to [Appellees] . . . the obligations to all of Morabito's creditors were paid as they came due." He provided a list of creditors pursuant to Rule 1003(b) that allegedly listed all of his creditors and corresponding debt, including a promissory note for $600,000 held by Edward Bayuk.

**C.    Suspension of the involuntary petition**

After a hearing, the court denied the Motion to Dismiss, but suspended the case pursuant to § 305(a)(1). The court said that it "stated its findings of fact and conclusions of law on the record in open court"[2] and held that the allegations in the

---

[2] Although the Order Denying Motion to Dismiss Involuntary Chapter 7 Petition and Suspending Proceedings Pursuant to

(continued...)

4

involuntary complaint were sufficient to overcome the Motion to Dismiss. Among other things, it found sufficient the allegation that Mr. Morabito was generally not paying his debts as they became due. Nevertheless, the court held that there was no evidence that there were other significant creditors, so the case was a two-party collection action; the court was not the proper forum for the collection action; and "the best interests of the creditors and the debtor would be better served by suspension of this case, and the Court will at this time abstain from hearing this case pursuant to 11 U.S.C. § 305(a)(1)." The court suspended the bankruptcy proceedings and lifted the automatic stay.

**D.    Discovery disputes and additional lawsuits**

Appellees sought to depose Mr. Morabito in the original state court action. The state court repeatedly required Mr. Morabito to appear for his deposition. Mr. Morabito refused to submit to a deposition because of "inconvenience."

Mr. Morabito filed a petition for writ of prohibition in the Nevada Supreme Court, but the supreme court rejected the petition. Nevertheless, Mr. Morabito still refused to appear for his deposition until the state court threatened to sanction him.

Also during this period, a number of other lawsuits with creditors holding potential claims against Mr. Morabito came to light: (1) a state court case entitled Desi Moreno, et al. v.

[2](...continued)
11 U.S.C. § 305(a)(1) ("Suspension Order") is in the record, neither party has provided the Panel with a copy of the hearing transcript. Moreover, the transcript does not appear on the bankruptcy court's docket.

<u>Berry-Hinckley Industries, et al.</u>, in which Mr. Morabito was a defendant; (2) a federal action in the United States District Court for the Northern District of California brought by Electric Properties East, LLC against Mr. Morabito under the Racketeer Influenced and Corrupt Organizations Act and state law; (3) one or more arbitration proceedings in California; and (4) a Nevada state court action initiated by The Hartford Fire Insurance Company, which was seeking indemnification and payment on guarantees from Mr. Morabito and others.

**E.    Lifting of the suspension**

In February 2014, the Moreno parties, Appellees, and Mr. Morabito filed a stipulation in bankruptcy court, whereby the parties stipulated "that the lift of the automatic stay set forth in the Court's Suspension Order applies to the [<u>Moreno</u>] State Court case, and allows the State Court case to proceed in its normal course . . . ."  The court approved the stipulation.

In March 2014, the Moreno parties and Mr. Morabito entered into a settlement agreement.  Appellees' counsel then sent a letter to Mr. Morabito and the Moreno parties, warning that the settlement would violate the automatic stay.  Nevertheless, the parties to the <u>Moreno</u> litigation stipulated to dismiss the case pursuant to the confidential settlement agreement.

Eight days later, Mr. Morabito filed a Motion for Clarification of Order ("Clarification Motion"), seeking to clarify that the automatic stay did not bar the <u>Moreno</u> settlement.  In response, Appellees filed a combined status report and opposition to the Clarification Motion.  Appellees apprised the bankruptcy court of the various undisclosed lawsuits

6

against Mr. Morabito and his alleged hindering and delay of discovery and collection efforts. Appellees argued that Mr. Morabito misled the court by swearing under oath that Appellees were his only significant creditors. They alleged that Mr. Morabito had demonstrated bad faith and fraudulent conduct by resisting discovery. Appellees also contended that they require the protections of the bankruptcy court.

Mr. Morabito then filed an Amended Rule 1003(b) List of Creditors that disclosed two additional creditors. He concurrently filed a declaration in which he admitted that he was a defendant in three lawsuits that he had "inadvertently omitted" from his original Rule 1003(b) list.

On June 26, 2014, the court held a hearing on the Clarification Motion and a status conference. It concluded that the Moreno settlement agreement did not violate the automatic stay.

The bankruptcy court further concluded, however, that the Suspension Order "was not premised upon an adequate factual foundation." The court noted Mr. Morabito's failure to disclose all of the lawsuits and stated that the court had a "difficult time accepting" the argument that the omission was a mere oversight. The bankruptcy court further noted that the state court found Mr. Morabito in contempt for refusing to appear at his deposition and obstructing Appellees' attempts to exercise their rights under state law. On July 10, 2014, the court entered its written order lifting the suspension ("Status Conference Order").

7

**F.    The motion for summary judgment**

Appellees moved for summary judgment, arguing that Mr. Morabito was generally not paying his debts as they became due.  They noted that Mr. Morabito was not paying Appellees under the Confessed Judgment, which amounted to over 98% of his debts; that Mr. Morabito systematically divested himself of estate assets through preferential and fraudulent transfers; and that Mr. Morabito has "played fast and loose with his obligation to fully disclose his assets, creditors, and the claims asserted against him."

Appellees also cited portions of Mr. Morabito's deposition testimony concerning the $600,000 note held by Mr. Bayuk. Mr. Bayuk, who is Mr. Morabito's former companion, has continued to pay Mr. Morabito's debts for "living expenses" totaling $50,000 to $75,000 per month.  The expenses include $11,000 per month in rent, $2,700 per month for lease of a Bentley, and seven credit card balances that include Mr. Morabito's legal expenses.

Mr. Morabito argued that he was generally paying his debts when due, the involuntary petition implicated only a two-party dispute, and dismissal or abstention was in the best interest of the creditors and the debtor.[3]  He attached the declarations of various creditors who stated that Mr. Morabito was current with payments and that they did not desire to participate in bankruptcy proceedings.  Mr. Bayuk, the holder of the $600,000 note, submitted a declaration in which he stated that, although

---

[3] Prior to filing his opposition, Mr. Morabito also filed a second amended Rule 1003(b) list.

8

he was a creditor prior to September 1, 2014, he has since made a gift to Mr. Morabito in the amount of the promissory note and destroyed the note. He further stated that he intended to continue gifting Mr. Morabito money in the future.

After a hearing,[4] the court granted Appellees' Motion for Summary Judgment and entered its Order Granting Summary Judgment and Judgment ("Summary Judgment Order") and Amended Findings of Fact and Conclusions of Law in Support of Order Granting Summary Judgment and Judgment ("FOF/COL"). The court found that:

> f. There is no genuine dispute that Morabito was not paying at least 98% of his debt[s] on the Petition Date.
>
> g. The Involuntary Proceeding is not a one-creditor dispute.
>
> h. Special circumstances exist that would permit the Court to enter an order for relief even if the Involuntary Proceeding is a one-creditor dispute.
>
> i. Even if the Involuntary Proceeding was a one-creditor dispute, it is because Morabito and Bayuk sought to isolate the Petitioning Creditors by paying all of Morabito's other debts.
>
> j. The materiality of the debt owned to the Petitioning Creditors swamped Morabito's other debt.
>
> k. The conduct of Morabito before the State Court and the bankruptcy court was gamesmanship.
>
> l. [Bayuk's declaration] demonstrates that, on the Petition Date, Morabito was not paying his debts himself, but that Bayuk was paying Morabito's debts.
>
> . . . .
>
> o. The Bayuk Declaration establishes that Bayuk expected, as of the Petition Date, to be repaid by Morabito the amounts due under the Bayuk Note

---

[4] The transcript of the hearing on the Motion for Summary Judgment is not included in the record on appeal. Moreover, the transcript is not included on the bankruptcy court's docket.

9

[$600,000].

p. Bayuk was a creditor of Morabito on the Petition Date and, as a result, the Involuntary Proceeding was not a one-creditor dispute on the Petition Date.

. . . .

r. Morabito was not paying the amounts due and owing to Bayuk under the Bayuk Note in addition to failing to pay the Petitioning Creditors under the Confessed Judgment.

. . . .

t. The amount of delinquency, the materiality of debt and nonpayment, the nature of the conduct of Morabito's affairs, and the inconsistent positions taken by Morabito and Bayuk before the Court by declarations, pleadings and Morabito's testimony in deposition demonstrate that, under a totality of circumstances, Morabito was not generally paying his debts as they became due on the Petition Date.

The court concluded that no evidence could be presented at trial to vary the undisputed facts, so "there is no question that the Court would render a directed verdict in favor of the Petitioning Creditors at trial."

The court also entered its amended Order for Relief Under Chapter 7 ("Order for Relief"), wherein it held that the requirements under § 303 had been satisfied.

Mr. Morabito timely filed his notice of appeal from the (1) Suspension Order, (2) Status Conference Order, (3) Summary Judgment Order, (4) FOF/COL, and (5) Order for Relief.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

10

**ISSUES**

(1)  Whether the bankruptcy court erred in denying the Motion to Dismiss and instead suspending the case.

(2)  Whether the bankruptcy court erred in lifting the suspension.

(3)  Whether the bankruptcy court erred in granting summary judgment in favor of Appellees and issuing the Order for Relief.

**STANDARDS OF REVIEW**

We review for an abuse of discretion a bankruptcy court's decision to suspend proceedings under § 305(a).  See Marciano v. Fahs (In re Marciano), 459 B.R. 27, 45 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013) (holding that the court did not abuse its discretion in declining to stay proceedings).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record."  United States v. Hinkson, 585 F.3d 1247, 1261–62 & n.21 (9th Cir. 2009) (en banc). "If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion."  USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 887-88 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1261–62).

11

"[W]e review de novo a bankruptcy court's decision to grant summary judgment." In re Marciano, 459 B.R. at 35. "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

## DISCUSSION

**A.  Mr. Morabito fails to provide the Panel with a sufficient record to review the bankruptcy court's decision to suspend the proceedings.**

Mr. Morabito argues that the court erred in suspending the involuntary proceedings and that it should have dismissed the petition outright.  Because Mr. Morabito fails to provide us with a complete record, we cannot review the court's ruling, and we affirm the bankruptcy court's Suspension Order.

To dismiss or suspend a case under § 305(a)(1), the court needs to determine that "the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" See Eastman v. Eastman (In re Eastman), 188 B.R. 621, 624 (9th Cir. BAP 1995) ("abstention in a properly filed bankruptcy case is an extraordinary remedy, and . . . dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal").  The BAP has adopted the multi-factor test set forth in In re Monitor Single Lift I, Ltd., 381 B.R. 455, 464–65 (Bankr. S.D.N.Y. 2008), to determine the best interests of the creditors and the debtor:

> (1) the economy and efficiency of administration;
> (2) whether another forum is available to protect the
> interests of both parties or there is already a pending
> proceeding in state court; (3) whether federal
> proceedings are necessary to reach a just and equitable

12

solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

In re Marciano, 459 B.R. at 46-47. The analysis is "based on the totality of the circumstances." Id. at 48. The bankruptcy court "must make specific and substantiated findings that the interests of the creditors and the debtor will be better served by dismissal or suspension." Id. at 46 (quoting Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 247 (9th Cir. BAP 2007)).

In determining whether dismissal or suspension is appropriate, the bankruptcy court must adhere to a two-step analysis. We analogized the analysis under § 305(a) to § 1112(b) and stated:

> We believe **this two-step process also is appropriate in the context of deciding a § 305(a) motion with respect to a pending Involuntary Petition. The bankruptcy court first must make findings that continuing the adjudication of the Involuntary Petition is or is not appropriate.** While no specific statutory cause is stated to guide a bankruptcy court, the development of the case law has provided guidance as to the factors to consider. Those were the factors identified in the Monitor Single Lift case . . . . **Only if the bankruptcy court had determined that adjudication of the Involuntary Petition should not go forward at the time of its decision would it need to consider whether it should dismiss the Involuntary Petition outright or simply "stay" the adjudication of the Involuntary Petition,** for instance, until the state court appeals had concluded.

Id. at 48 (emphases added).

In the present case, the bankruptcy court held a hearing on

13

the Motion to Dismiss on October 22, 2013 and denied the Motion to Dismiss, but suspended the involuntary proceedings pursuant to § 305(a)(1). The Suspension Order does not indicate that the bankruptcy court engaged in the analysis required by Marciano. But the written order also says that the court "stated its findings of fact and conclusions of law on the record in open court . . . ." We cannot review the oral ruling because Mr. Morabito has not provided a transcript.

Without the benefit of the hearing transcript, we are unable to discern (1) whether the bankruptcy court identified the proper legal standard and (2) whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." Hinkson, 585 F.3d at 1261–62.

It is Mr. Morabito's duty to provide the Panel with a complete record on appeal. See Welther v. Donell (In re Oakmore Ranch Mgmt.), 337 B.R. 222, 226 (9th Cir. BAP 2006) (the appellant "bears the burden of presenting a complete record") (citing Kritt v. Kritt (In re Kritt), 190 B.R. 382, 387 (9th Cir. BAP 1995)). "The settled rule on transcripts in particular is that failure to provide a sufficient transcript may, but need not, result in dismissal or summary affirmance and that the appellate court has discretion to disregard the defect and decide the appeal on the merits." Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004), aff'd, 170 F. App'x 457 (9th Cir. 2006) (citations omitted). But see Ehrenberg v. Cal. State. Univ. (In re Beachport Entm't), 396 F.3d 1083, 1087 (9th Cir. 2005) ("Although summary dismissal is within the BAP's

14

discretion, it 'should first consider whether informed review is possible in light of what record has been provided.'").

Mr. Morabito's failure to present us with a complete record prevents us from conducting an "informed review" to determine whether the court abused its discretion. Therefore, we affirm the Suspension Order.

**B.    The bankruptcy court did not err in lifting the suspension.**

Mr. Morabito argues that the court erred in lifting the suspension. We disagree.

The bankruptcy court was free to reconsider the Suspension Order, especially given the newly-discovered facts raised by Appellees. The Ninth Circuit has stated that "bankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." Meyer v. Lenox (In re Lenox), 902 F.2d 737, 739-40 (9th Cir. 1990) (citations omitted). In other words, a bankruptcy court has "power to reconsider any of its previous orders when equity so requires." Id. at 740 (citations omitted).

The court previously found that Appellees established sufficient grounds for filing the involuntary petition; however, it invoked § 305(a)(1) to suspend the proceedings, because (1) there was no other significant creditor and the case was essentially a two-party collection action, and (2) Appellees cannot use the bankruptcy court and Bankruptcy Code merely to collect on a judgment. At the status conference and hearing on the Clarification Motion, the bankruptcy court focused on Mr. Morabito's failure to disclose multiple ongoing litigation

15

and his disregard of the state court's orders. It stated that its initial ruling "was not premised upon an adequate factual foundation" and that it would correct its mistake by lifting the suspension.

We find no error in the court's determination that Mr. Morabito misled the court into believing that he had no other significant creditors. We also find no error in the court's determination that Mr. Morabito has willfully disobeyed the state court's orders. The court did not abuse its discretion when it determined that Mr. Morabito's misrepresentations and defiance of the state court warranted resumption of the bankruptcy proceedings.

In sum, the court decided that the factual basis for its suspension of the case was false. Given that the court had discretion to impose the suspension in the first place, it was not an error for the court to lift the suspension.

**C.  The bankruptcy court did not err in granting summary judgment and issuing the Order for Relief.**

Mr. Morabito contends that the court erred in granting summary judgment in favor of Appellees. He argues that the court erred by concluding that (1) he was generally not paying his debts as they came due and (2) his debt to Bayuk was due and owing. We disagree.

In order to prevail on summary judgment, the petitioning creditors "must establish that (1) three or more creditors (2) hold claims against the alleged debtor that are not contingent as to liability and (3) are not the subject of a bona fide dispute as to liability or amount (4) in the aggregate

16

amount of at least [$15,325], and (5) that the alleged debtor is generally not paying such debtor's debts as such debts become due." In re Marciano, 446 B.R. 407, 420 (Bankr. C.D. Cal. 2010), aff'd, 459 B.R. 27 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013) (citing 11 U.S.C. § 303(b), (h)).

Appellees hold undisputed, non-contingent claims against Mr. Morabito that exceed the threshold amount, as memorialized in the Confession of Judgment. The only dispute is whether Mr. Morabito is generally not paying his debts as they become due.

### 1.    Summary judgment standard

Under Civil Rule 56, made applicable through Rule 7056, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Civil Rule 56(e)(2).

In reviewing an order granting summary judgment, the Panel "must view the evidence in the light most favorable to the non-moving party and 'determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law.'" Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva), 550 F.3d 755,

17

760 (9th Cir. 2008) (citation omitted). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 761 (citation omitted). Findings of fact made in summary judgment proceedings are not subject to the "clearly erroneous" standard of review, because the trial court has not weighed the evidence in the conventional sense. In re Marciano, 459 B.R. at 35 (citations omitted).

The bankruptcy court found that there was no genuine dispute of material fact. We agree that summary judgment was warranted on this record. There was no conflict in the evidence about what had happened in the real world, and the only dispute concerned the application of the legal standard to the facts. Summary judgment was a proper way to resolve this purely legal dispute.

## 2. Whether Mr. Morabito was generally not paying his debts as they became due

The crux of the Motion for Summary Judgment was whether Mr. Morabito was "generally not paying his debts as such debts become due." § 303(h)(1).

The Ninth Circuit has "adopted a 'totality of the circumstances' test for determining whether a debtor is generally not paying its debts under 11 U.S.C. § 303(h)." Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1072 (9th Cir. 2002) (quoting Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 779 F.2d 471, 475 (9th Cir. 1985)). "A finding that a debtor is generally not paying its debts 'requires a more general showing of the debtor's financial condition and debt structure than

18

merely establishing the existence of a few unpaid debts.'" Id. (quoting In re Dill, 731 F.2d 629, 632 (9th Cir. 1984)).

The "totality of the circumstances test" is not a rigid, mathematic analysis: "The authority of the court is triggered and guided by the totality of the circumstances existing when the petition is filed.  Congress intended to provide a flexibility which is not reducible to a simplistic formula." In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d at 475.  "[I]t is not possible to lay down guidelines that fit all cases . . . . It is intended that the court consider both the number and amount [of debts] in determining whether the inability or failure is general."  2 Collier on Bankruptcy ¶ 303.31 (16th ed.) (quoting Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. Pt. II, 75 n.5 (1973)).

The Ninth Circuit has cited with approval an Eleventh Circuit decision holding that, "[i]n determining whether a debtor is generally paying its debts as they become due, courts 'compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the [d]ebtor's conduct of its financial affairs.'" In re Vortex Fishing Sys., Inc., 277 F.3d at 1072 (quoting Gen. Trading Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1504 n.41 (11th Cir. 1997)).[5]

---

[5] Courts around the country have considered: the number of debts; the amount of the delinquency; the materiality of the nonpayment; the nature and conduct of the debtor's business; the debtor's ability to satisfy only small periodic payments, not
(continued...)

19

In the present case, the bankruptcy court found that there was no dispute of material fact that Mr. Morabito was generally not paying his debts as they became due.  It so held because he was not paying at least 98% of his debts; the size of the debt owed to Appellees swamped his other debt; and he and Mr. Bayuk were paying off all other debts to isolate Appellees.  It concluded that "[t]he amount of delinquency, the materiality of debt and nonpayment, the nature of the conduct of Morabito's affairs, and the inconsistent positions taken by Morabito and Bayuk before the Court by declarations, pleadings and Morabito's testimony in deposition demonstrate that, under a totality of circumstances, Morabito was not generally paying his debts as they became due on the Petition Date."  The bankruptcy court did not err.

### a.    Amount of delinquency

While it may be true that Mr. Morabito was current on all other debt payments thanks to Mr. Bayuk's largess, it is undisputed that he was not making payments on Appellees' claim. It is also not disputed that his debt to Appellees constituted at

---

[5](...continued)
long-term obligations; the debtor's making regular payments only on small, recurring obligations, not on larger debts; the rapid decline in the value of the debtor's assets resulting from asset sales rather than profit-generating activities; the amount of the debtor's debts compared to the debtor's yearly income; payments made by third parties or a waiver of claims by a third party; the debtor's liquidation of assets; the fact that debtor's defaults are only on extraordinary debts; and the fact that the due and unpaid debts are made up entirely of the claims of the petitioning creditors while other non-petitioning creditors are all paid.  2 Collier on Bankruptcy ¶ 303.31[2] (citations omitted).

least 98% of his outstanding debt. We find no error in the court's consideration of the unpaid debt as a percentage of Mr. Morabito's overall debt. See Focus Media, Inc. v. Nat'l Broadcasting Co., Inc. (In re Focus Media, Inc.), 378 F.3d 916, 929 (9th Cir. 2004) (agreeing that, under the totality of the circumstances, "[h]aving 80% of your debts over 90 days old is not paying debts as they come due").

### b. Number of unpaid debts

We also find no error with the bankruptcy court's holding that, in this situation, the fact that Appellees' claim represents a single debt does not mean Mr. Morabito was "generally paying" his debts. Mr. Morabito and Mr. Bayuk were selectively making payments to other creditors while defaulting only on the debt to Appellees. In other words, it is by Mr. Morabito's own design that he was not paying only one debt, and he was "isolating" Appellees so that it appeared as though he was paying the majority of his debts. We agree that "there is 'substantial authority for the proposition that even though an alleged debtor may owe only one debt, or very few debts, an order for relief may be granted where such debt or debts are sufficiently substantial to establish the generality of the alleged debtor's default.' For example, courts have entered an order for relief 'where the creditors were few in number but a large amount was owed to them.'" In re Marciano, 446 B.R. at 421 (quoting Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer), 202 B.R. 341, 350, 351 (Bankr. E.D.N.Y. 1996)).

Mr. Morabito argues extensively that the involuntary petition was deficient because Mr. Bayuk was not a creditor to

21

whom a debt was due and owing at the time Appellees filed the involuntary petition.[6] He contends that Mr. Bayuk had never made a demand on the note, and there was no timeline for him to repay Mr. Bayuk; thus, the involuntary petition was a two-party collection action.

Whether Mr. Bayuk was a creditor of Mr. Morabito is not dispositive. As discussed above, the comparative number of paid and unpaid creditors may be relevant to the "totality of the circumstances" test to determine whether a debtor is "generally not paying" his debts under § 303(h)(1). Even if Mr. Bayuk were not a creditor, the bankruptcy court did not err in considering the "totality of the circumstances" and granting summary judgment.

### c. Efforts to thwart collection attempts

The bankruptcy court properly considered, in its evaluation of the totality of the circumstances, the exceptional circumstances of this case. Those "exceptional" circumstances include: "(1) an exceptional case of a debtor with a sole creditor who would otherwise be without an adequate remedy under State or Federal law (other than bankruptcy law) if denied an order for relief or (2) a showing of special circumstances amounting to fraud, trick, artifice or scam." In re 7H Land & Cattle Co., 6 B.R. 29, 34 (Bankr. D. Nev. 1980); see In re Cent. Hobron Assocs., 41 B.R. 444, 449 (D. Haw. 1984) ("An exception to

---

[6] Mr. Morabito also argues that Mr. Bayuk later tore up the note and forgave the $600,000 debt. However, it is undisputed that this event occurred post-petition and the note was valid as of the petition date.

the rule that one unpaid debt will not merit relief is that a single creditor may get relief if it can show that it has a special need for bankruptcy court relief and that state-law remedies would not be adequate, or that the debtor has engaged in trick, sham, artifice or fraud."); see also 2 Collier on Bankruptcy ¶ 303.31[5] ("Examples of 'exceptional' circumstances include when the sole creditor has no other available remedy under federal or state law, recovery of a preference that is unavoidable under state law, the transfer of assets to insiders and third parties or 'there are [other] circumstances amounting to fraud, trick, artifice, or scam on the part of the debtor.' A further example of an exceptional circumstance is when the debtor has paid all of its small creditors, leaving only one large creditor." (citations omitted)).

In the present case, Appellees have provided evidence of fraud, artifice, or a scam. The record supports the bankruptcy court's findings that Mr. Morabito schemed to isolate Appellees by paying all debts but those owed to Appellees, in an attempt to thwart Appellees' efforts to bring Mr. Morabito into bankruptcy. Further, the record also shows a pattern of wilful disregard of state court discovery orders and false representations to the bankruptcy court. Mr. Morabito's conduct amounts to gamesmanship, fraud, and artifice that constitute exceptional circumstances.

### d. The debtor's ability to pay

Mr. Morabito's ability or plan to pay creditors is also important. See In re Focus Media, 378 F.3d at 929 (order for relief was appropriate where the debtor was "a company that had

23

substantial amounts of unpaid bills and no plans or ability to pay them"). He has admitted that he has no means or plan to satisfy his debt to Appellees, and indeed has no way to pay any of his debts other than through Mr. Bayuk's generosity.

### e.    The debtor's conduct of his financial affairs

Lastly, the court did not err in faulting Mr. Morabito for his conduct of his financial matters. "The court may examine the Debtor's overall contemporaneous handling of its affairs in evaluating whether to order relief. If the Debtor is conducting his financial affairs in a manner inconsistent with good faith and outside the ordinary course of business, it may affect the court's determination." In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d at 475 (quoting In re Reed, 11 B.R. 755, 760 (Bankr. S.D.W.Va. 1981)). There is no dispute that Mr. Morabito only defaulted on payments to Appellees. As a result, he was able to claim that the involuntary proceeding is merely a one-creditor dispute outside of the Bankruptcy Code. Mr. Morabito's purposeful isolation of Appellees evidences a lack of good faith that supports summary judgment.

Accordingly, considering the totality of the circumstances, the court did not err in determining that Mr. Morabito was generally not paying his debts and granting summary judgment and relief against Mr. Morabito.

### CONCLUSION

For the foregoing reasons, we AFFIRM.

24